Edward M. Bacot et al. v. Phoenix Insurance Company
of Brooklyn.

[50 South. 729.]

1. Insurance.  *Fire.  Policy.  Sole and unconditional ownership.*

> The clause in a fire insurance policy making its validity depend
> upon the sole and unconditional ownership by insured of the
> property insured is reasonable and valid, and a breach of such
> stipulation, unless waived by the company, will generally excuse
> it from liability.

2. Same.  *Nature of provision.  Husband's rights to wife's land.*

> An insurance ownership is sole when no one else has any interest
> in the property as owner, and is unconditional when the quality
> of the estate is not limited or affected by any condition; the clause
> "sole and unconditional ownership" contemplating beneficial and
> practical ownership, but not including mere rights that the hus-
> band may have in a homestead, unless the policy is so worded as
> to undertake to insure those rights.

3. Same.  *Same.  Same.  Homestead.*

> A husband cannot insure a house on the homestead, title to which
> is in the wife, representing that he is the sole and unconditional
> owner, and, when the property is destroyed, abandon the insur-
> ance contract and its conditions as to sole ownership, and collect
> the value of the policy, on the theory that he, though not the sole
> owner as represented, yet has an insurable interest in the prop-
> erty as a homestead.

4. Same.  *Same.  Mortgage clause.*  Code 1906, § 2596.

> Code 1906, § 2596, providing that there shall be attached to each
> fire insurance policy taken out by a mortgagor a clause to the
> effect that any loss or damage under the policy shall be payable
> to the mortgagee as his interest may appear, and that the insur-
> ance as to his interest shall not be invalidated by any act or neg-
> lect of the mortgagor or owner, automatically writes itself into
> every insurance contract, where the insurance company allows a
> mortgage clause to be inserted, and makes a new and independent
> contract between the mortgagee and insurance company in no
> way dependent upon the original policy between the owner and
> insurer, and the independent contract will not be invalid even

if the original policy was void from its inception, and it will be unaffected by any conditions which would invalidate the policy as to the mortgagor whether prior or subsequent to the insertion of the mortgage clause, and hence, where an original policy was void because taken by a husband in his own name on a house on the homestead owned by the wife, he representing that he was the sole and unconditional owner, the validity of a contract between insurer and the subsequent mortgagee of the premises formed by attaching a mortgage clause to the policy was not affected thereby, and the mortgagee might recover as to his interest irrespective of conditions imposed upon the owner by the policy.

5. SAME. *Same. Consideration.*

The consideration paid by the insured for a policy of fire insurance is a continuing consideration and will support the insertion of a mortgage clause therein at the time of its issuance, or afterwards while it is in force.

6. SAME. *Pleading. Misjoinder of plaintiff. Judgment for defendant. Reversal by supreme court.*

Where, in an action to recover on a fire insurance policy, containing a mortgage clause, the owner of the premises and her husband were improperly joined as plaintiffs with the mortgagee, but the question whether they had an interest, and how they should assert it, was one litigated in the case, an erroneous judgment for the defendant will not be affirmed by the supreme court because of the misjoinder; but the case will be remanded to the trial court where the improper parties may be eliminated on motion, or that court may control the matter by instruction, and thus dismiss them from the case.

7. SAME. *Parties. Mortgagee. Interest less than policy.*

Where the interest of a mortgagee is the only valid liability under a fire insurance policy, all that is due thereunder being due to him, "as his interest may appear," he can sue thereon, though his interest be less than the face of the policy.

FROM the circuit court of Pike county.

HON. MOYSE H. WILKINSON, Judge.

Bacot, Burton Bridges and Emily Bridges, appellants, were plaintiffs in the court below; the Phoenix Insurance Company of Brooklyn, appellee, was defendant there. From a judgment in favor of the defendant, the plaintiffs appealed to the supreme court. The opinion of the court states the facts.

*Mixon & Cassidy,* and *Lotterhos & Hewitt,* for appellants.

On the second count of the declaration Burton Bridges and Emily Bridges should recover the amount of the policy less the amount of the mortgage debt, even though the policy is written in the name of Burton Bridges. The declaration alleges that the property insured was a house on a homestead, and even though the title was in the name of Emily Bridges, Burton Bridges, the husband, had a legal right to take out the insurance thereon in his own name for the benefit of himself and his wife. This is apparent under the common law. See also Code 1906, § 2161, preventing the alienation of the wife's homestead without the husband's consent; and Code 1906, § 1657, providing that exempt homestead property shall descend, free from the claims of creditors, and belong to the surviving husband and other heirs. Certainly it must follow that the husband would have the right to insure said property in his own name, notwithstanding the "sole and unconditional ownership" clause of forfeiture in the policy. *Merrett v. Insurance Co.,* 42 Iowa, 11; *Continental Ins. Co. v. Wingfield* (Tex. 1903), 73 S. W. 847; *Warren v. Insurance Co.* (Tex.), 35 S. W. 810; *Insurance Co. v. Wicker* (Neb.), 100 N. W. 130; *Hanover Ins. Co. v. Bohn,* 48 Neb. 743; *Insurance Co. v. Barrowcliff,* 45 N. J. L. 543; *Webster v. Insurance Co.,* 53 Ohio, 558; *Mallery v. Frye,* 21 App. D. C. 105; *Miotke v. Insurance Co.,* 113 Mich. 166; 22 Fed. 503; *Rockford Ins. Co. v. Nelson,* 65 Ill. 415; *Harris v. Ins. Co.,* 50 Pa. 341; *Kausal v. Ins. Co.,* 31 Minn. 17; *Lenaugh v. Commercial Union,* 110 N. W. 748.

It was the evident intent of the parties to insure the house on the homestead to the amount of the policy; and the interest which Burton Bridges had was sufficient to uphold the contract and meet the requirements of the clause as to "sole and unconditional ownership." *Insurance Co. v. Schmidt,* 151 Fed. 681; *Mass. v. Ins. Co.* (Mich.), 111 N. W. 1044; *Hough v. Ins. Co.,* 29 Conn. 10; *Insurance Co. v. Pitts* (Miss.), 41 South. 5; *Insurance Co. v. Holmes,* 75 Miss. 390; *Home Ins. Co. v. Gibson,*

17 South. 13; *Georgia Home Ins. Co. v. Jones,* 49 Miss. 80; *London, etc., Ins. Co. v. McGuire,* 52 Miss. 227.

In the declaration it is alleged that the description of ownership was by mistake, without fault on the part of insured, and the case should have gone before the jury with the evidence regarding the mistake.

There was no effort to reform or make a new contract, but the allegations and consequent offer of proof, was to meet what the appellee claims is a forfeiture of what would otherwise be a valid contract.

The parol evidence rule is relaxed to show mistake so as to avoid forfeiture. 16 L. R. A. (N. S.) 1188; *Deitz v. Insurance Co.,* 33 W. Va. 526; Cook v. Insurance Co., 60 Neb. 127.

Now as to the claim of the mortgagee; if the demurrer to the second count be well taken, this should not affect his demand as set forth in the first count of the declaration, under the terms of his contract with the insurance company as expressed by the standard mortgage clause, attached to the policy, and clause of the policy providing that the only conditions that shall apply to mortgagee are such as shall be written upon, attached, or appended to the policy, the demurrer to this count should have accordingly been overruled.

In the case of *East v. Insurance Co.,* 76 Miss. 697, the court said: "As the loss payable clause agrees to pay William Thomas East his interest in the insured premises at the time of the loss, and as the mortgage clause stipulates that the only conditions that shall apply to the interest of William Thomas East are those expressed in the loss payable clause, these two clauses constitute a promise to pay William Thomas East whatever sum may be due him by James W. East at the time of loss, without regard to any act or default of James W. East."

There is no contention made that the mortgagee here forfeited any rights which he may have had, but it is said that he cannot recover because the policy is of no force as to the mortgagors, under the warranty of title, and that the *East case, supra,*

is plain, unequivocal, and positive in making the contract be-
tween the insurance company and the mortgagee independent
of any acts or rights of the mortgagor; the opinion is plain
and strong to this effect as are the many other authorities, in
which by reason of the acts complained of having been before
the affixing of the mortgage clause, the courts said that the
mortgagee was not affected by acts of the mortgagor before, at
the time of, or after.    In the *East case, supra,* no qualification
was made, and no distinction drawn between acts precedent
and subsequent.

By the formerly used, but now obsolete loss-payable clause,
a mortgagee had no protection, his rights in the policy being
subject at any time to forfeiture by acts of the insured, and it
was to the end that his rights might be made certain and sub-
ject to forfeiture for his own acts only, that the "union," or
"standard" mortgage clause was devised.    Indeed, in this
state, it is by statute, Code 1906, § 2596, read into every policy.
*Oakland Insurance Co. v. Bank,* 58 Am. St. Rep. 667.

Even before the adoption of the standard form, the New
York court, in the case of *Hastings v. Westchester, etc., Insur-
ance Co.,* 73 N. Y. 141, decided that a loss payable clause made
as between the insurer and the mortgagee, an independent con-
tract of insurance giving the same benefit as if taken out in a sep-
arate policy, making the mortgagee responsible for his own acts
only, the insurer cannot set up any defense based upon any act
or neglect of the mortgagors, whether committed before or
after the issuance of the policy, or the making of the agreement
between the insurer and the mortgagee, the apparent purpose
of the clause is that no distinction is to be drawn between acts
before or after the agreement.    This is the leading case in the
United States, cited in numerous opinions.    After adoption
of the standard clause, nearly all of the courts adopted the con-
struction in the *Hastings case, supra,* and in all cases involving
attempted forfeiture for acts of the mortgagor subsequent to
the making of the mortgagee agreement.

On the question of immunity of the mortgagee from the acts of the mortgagor at the time of, or prior to the affixing of the mortgagee clause, the courts are divided, and a most highly interesting and important question to the public is presented to this court for decision.

We contend that it is settled that this contract is independent, and the mortgagee's rights are certain and known as though he were insuring in a separate policy; and cite from the many authorities on this question, *Eddy v. London Assurance Corporation,* 143 N. Y. 311; *Syndicate Insurance Co. v. Bohn,* 65 Fed. 165; *Smith v. Union Insurance Co.,* 25 R. I. 260; *Magoun v. Firemen's Fund Insurance Co.,* 86 Minn. 486; *Phenix Insurance Co. v. Omaha, etc., Co.,* 41 Neb. 834; *Westchester, etc., Co. v. Coverdale,* 29 Pac. 682; *Hanover Insurance Co. v. Bohn,* 48 Neb. 743; *Hare v. Headley,* N. J. Eq. 545; *Oakland Insurance Co. v. Bank,* 47 Neb. 717; *Phenix Insurance Co. v. Floyd,* 19 Hun. 287; *Ormsly v. Phenix Insurance Co.* (S. Dak.), 58 N. W. 301; *City, etc., Bank v. Insurance Co.,* 122 Mass. 165; *Hartford, etc., Insurance Co. v. Ollcott,* 97 Ill. 439; *Insurance Co. v. Field,* 70 Pac. 149; *Phenix Insurance Co. v. Hinds* (Kan.), 73 Pac. 893; 13 Am. Eng. Ency. of Law, 205, 206.

It cannot be contended that Bacot was not a mortgagee. The fact that the mortgage is evidenced by two instruments, the one a conveyance, and the other for defeasance, is no concern of the appellee's. This was probably the first form of mortgage. This form has never been condemned. Even without the instrument executed by mortgagee, if all parties intended the conveyance as a mortgage, it would so be. The purpose of our statute, Code 1906, § 4783, is to prevent fraud on a vendee, and to that end makes a rule of evidence, but in no sense forbids the agreement to be a mortgage of this kind. These parties say these instruments were intended and recognized as mortgages; and they were also recognized by the insurance company as a mortgage when the clause was affixed to the policy.

The insurance company furthermore knew that Bacot was claiming an interest as mortgagee, yet now denies liability on the grounds of the alleged defective mortgage.

If Burton and Emily Bridges, his wife, are entitled to recover, it is proper that they join the mortgagee; and whereas, on the other hand, if the insured cannot recover, the mortgagee's claim would equal the whole amount which might be recovered under the policy, and he could sue alone. *East v. Insurance Co., supra; Lowrey v. Insurance Co.,* 75 Miss. 43; May on Insurance, § 449; *Burlington Insurance Co. v. Lowrey,* 61 Ark. 108; *Home Insurance Co. v. Gillman,* 112 Ind. 7; *Lasher v. Insurance Co.,* 18 Hun, 98; *Great Western v. Aetna Insurance Co.,* 40 Wis. 373; *Georgia Home v. Leaverton* (Tex.), 33 S. W. 579.

If Burton Bridges insured as husband, and, as some of the authorities hold, this was for the benefit of himself and wife, and if he insured as her agent, it is proper, in suing to recover, to sue for her use. If the court holds the second count bad and the first count good, the right to recover would be in the mortgagee. If both counts are good, then all of the necessary parties are before the court.

*McLaurin, Armistead & Brien,* and *Price & Whitfield,* for appellee.

Emily Bridges, the wife, is alleged in the declaration to be the owner of the title to the homestead. But she is not the assured. The insurance company is under no contractual relationship toward her, and she can therefore have no right of action on the policy. A contract of insurance is a personal contract, and not one running with the property. 16 Peters (U. S.), 496; 1 Cooley's Briefs on Insurance, 203.

Burton Bridges, the assured, cannot legally sue and recover, because the declaration shows the unconditional ownership of the property to be in Emily Bridges, the wife. The policy, and exhibit to the declaration, provides that "if the interest of

the assured be other than unconditional and sole ownership; or if the subject of the insurance be a building on ground not owned by the assured in fee simple," then the policy shall be void.   *Rosenstock v. Insurance Co.,* 82 Miss. 674.

Bacot, the mortgagee, cannot legally sue and recover, because the policy was void from its inception, having been issued to Burton Bridges, in whom there was no unconditional ownership of the property, therefore the policy never attached, and there was no consideration to support the independent contract with the mortgagee.   *Baldwin v. German Insurance Co.,* 75 N. W. 326; *Glenn Falls Insurance Co. v. Porter,* 33 S. E. 473; *Hanover Fire Insurance Co. v. National, etc., Bank,* 34 S. W. 333; *Genesee, etc., Assn. v. U. S. Fire Insurance Co.,* 44 N. Y. Sup. 979; *American Central Insurance Co. v. Cowan,* 34 S. W. 461; *Dorris v. Insurance Co.,* 135 Mass. 251.

Even if it should be conceded that the policy were valid as to Bacot, as mortgagee, he could not successfully sue in a court of law.   The policy is for $700, while his claim is for $512.91. He cannot accordingly maintain a suit originally begun in the circuit court.   *Lowrey v. Insurance Co.,* 75 Miss. 43; *East v. Insurance Co.,* 76 Miss. 697.   In both of these cases cited the right in the mortgagee to sue was put expressly on the basis that such mortgagee's interest equalled the amount of insurance, which is not true in this case.   Bacot's whole claim as alleged in the declaration, amounts to $512.91 and the policy was for $700.   *Hartford, etc., Insurance Co. v. Davenport,* 37 Mich. 609.   The cause of action cannot be split on a single insurance policy.   Whoever sues must be able to enforce the whole of the contract.

This court in *Rosenstock v. Insurance Co., supra,* approving the case of *Syndicate Insurance Co. v. Bohn,* 65 Fed. 165, has practically settled the contention that the contract with the mortgagee is an independent contract by the insurance company, separate from the contract made with insured, but this court has never yet decided that, where the policy is void from

its inception, there is any consideration to support the independent contract with the mortgagee; and we insist that the authorities cited in support of appellee's proposition are conclusive.

If the original contract with the insured is void, how can the contract with the mortgagee be supported? What consideration is there for such a contract with the mortgagee? We can understand that if the original contract with the assured is a valid contract, then the same consideration would support the subsequent independent contract with the mortgagee, but if there is not a valid contract with the assured, and there is no new consideration given for the independent contract with the mortgagee, then there is nothing to support the contract with the mortgagee, and it necessarily fails. This view seems in perfect accord with the authorities cited, which hold that, by reason of the fact that the contract with the mortgagee is an independent contract, no act of the assured after the policy has attached, will vitiate the contract with the mortgagee. This is sound reasoning where the contract was a valid one in its inception, because a contract with the mortgagee is derivative, based on the original contract between the company and the assured and supported for its consideration by the premiums; but when there is no valid contract in law between the assured and the insurance company, how can it be said that an independent, valid contract can arise from a void contract? The cases cited, *supra,* in support of this contention, show clearly that no valid contract can arise out of, and be bottomed on, a void contract, as, where the original contract between the assured and the company is void, no independent valid contract can exist with the mortgagee, there being no new consideration to support it.

Therefore the demurrer to the first count of the declaration was properly sustained wherein the court held that Bacot, the mortgagee, had no right of action on the policy in a court of law, because his claim, even if a valid and independent con-

tract, did not equal the amount of insurance, and under the *East case* and the *Lowrey case, supra,* he had no standing in a court of law to maintain his action.

In the second count of the declaration, it is set forth that the title to the house and lot covered by the insurance was in the name of Emily Bridges and by accident and mistake, the policy was written in the name of Burton Bridges, the husband, and that the said contract of insurance yet remained in force, unchanged. The appellee demurred to this second count of the declaration for the reason that the policy required that the assured should be the sole and unconditional owner, and that he should own in fee simple the lot upon which any building stood; and it was set forth in the declaration that the assured, Burton Bridges, the husband, had no interest in the property, but that the title to the same was in the name of the wife, and as the insurance company had no contract with the wife, the wife could not sue because of the want of any contract with the insurance company; and the husband could not sue because of the want of title to the property. There is no allegation in the declaration that the insurance company was ever made aware at the time of the issuance of the policy, that Burton Bridges had no title or ownership on the property insured. There is no averment in the declaration of any knowledge whatever on the part of the insurance company that the husband's title to the property was otherwise than sole and unconditional and in fee simple; no facts are set forth in the declaration on which there is any waiver claimed in these provisions of the policy; and the acceptance of the policy containing these requirements is an affirmative assent and answer that they do so exist, on which the insurance company has a right to rely and act. The policy was notice to Burton Bridges that the company deemed his interest that of unconditional ownership; that it insured him against loss to that extent only, and that it expressly excluded every other interest from the insurance unless Burton Bridges might notify it that he held a different interest, and cause a true description of it to be writ-

ten into or endorsed upon the policy. The silent acceptance of the policy by Burton Bridges closed the contract, and bound him to the agreement, evidenced by the policy, that every interest of his but that of unconditional ownership was excluded from the promised indemnity. *Syndicate Insurance Co. v. Bohn,* 65 Fed. 171; *Rosenstock v. Insurance Co.,* 82 Miss. 687.

Therefore, the court below was right in sustaining the demurrer as to the right of Burton Bridges to maintain the action, as the declaration set forth on its face that Burton Bridges had no title or ownership in the property insured.

The court below was likewise correct in sustaining the demurrer as to Emily Bridges, the wife, because she had no contract whatever with the insurance company. The sustaining of the demurrer to both counts of the declaration was correct, and within the line of authority laid down by the supreme court of Mississippi, as well as by a vast majority of the tribunals of other states. But it is contended by the counsel for appellants that the property insured was a homestead, as set forth in the declaration, and that notwithstanding Burton Bridges, the husband, had no right, title, or ownership in the homestead, no fee simple interest, as provided by the policy, he still has a right to maintain the suit on the ground that he has an insurable interest in the homestead as the husband; and that this insurable interest was sufficient to support the contract. Opposing counsel cite a great number of authorities, which the court, upon examination, will see are applicable to those states where the marital rights under the common law exist, but in all the cases we have examined where the marital rights at common law have been changed by statute and the disabilities of a wife in reference to the control, management, sale, and disposition of her property been removed, as is the law in this state, the authorities cited by counsel have no application. Code 1906, § 2517.

Argued orally by *F. H. Lotterhos,* for appellant, and by *A. A. Armistead,* for appellee.

MAYES, J., delivered the opinion of the court.

On the 4th day of August, 1908, a suit was commenced in the circuit court of Pike county against the Phœnix Insurance Company to recover the sum of $700; that being the face value of a certain insurance policy issued by the company in favor of Burton Bridges on a certain dwelling located in the town of Summit, insuring same against loss by fire. The suit was begun in the name of E. M. Bacot, Emily Bridges, and Burton Bridges, for the use of E. M. Bacot and Emily Bridges, and contains two counts. The substantial allegations of the first count are as follows, viz.: That Burton Bridges is the husband of Emily Bridges, and on the 17th day of January, 1907, they were the owners of a homestead in the town of Summit, whereon was located a frame building used and occupied by them as their home and valued at more than $700. On that date an insurance was effectuated with the insurance company covering this property and indemnifying against loss by fire, the policy being for the sum of $700 and being less than the value of the house. We shall allude to the specific terms of this policy later on. On the date that this insurance was effectuated, a mortgage existed on the property in favor of E. M. Bacot for the sum of $433, with interest at the rate of 6 per centum from December 1, 1906. The so-called mortgage was in reality a deed signed by Emily Bridges and Burton Bridges to E. M. Bacot, reciting as the consideration the sum of $433; but there was a written agreement between the parties that upon the repayment to Bacot of the sum of $433 on or before the 1st day of December, 1906, the property should be reconveyed by Bacot to them, and, since this case is here on demurrer, we deal with it as though there was a formal mortgage. Other indebtedness due by the Bridges to E. M. Bacot, which it is claimed was covered by this agreement, ran the total indebtedness up to the sum of $512.91. It is shown in the declaration that the title to this property was in Emily Bridges, the wife of Burton Bridges, and it does not appear

that Burton Bridges had any title, unless it can be said that because the property was a homestead and used and occupied by both as such constitutes title within the meaning of unconditional and sole ownership clause of the policy. The insurance policy contains, among many others, the following clauses, viz.: "The entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated," etc., etc. It further provides that: "This entire policy, unless otherwise provided by agreement indorsed hereon and added hereto, shall be void, etc., if the interest of the insured be other than unconditional and sole ownership, or if the subject of the insurance be a building on ground not owned by the insured in fee simple." The policy further provides that: "This policy shall be canceled at any time at the request of the insured; or by this company giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is canceled by this company by giving notice it shall retain only the pro rata premium."

On the day that this policy was issued to Burton Bridges, a mortgage clause was inserted in the face of the policy in writing, substantially, if not literally, in the language of section 2596 of the Code of 1906, which requires that such clause shall be attached to each fire insurance policy taken out by a mortgagor or grantor in a deed in trust, and providing what shall be contained in such clause. That part of the mortgage clause which it is material for us to notice is as follows, viz.: "Loss or damage, if any, under this policy, shall be payable to E. M. Bacot, McComb City, Miss., as mortgagees, or to their trustee, as interest may appear, and this insurance, as to the interest of

the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property," etc., etc. The mortgage clause also provides for the cancellation of the policy on the terms indicated by the policy; that is to say, it may be canceled by either party on compliance with certain conditions as to notice, specified in the policy and mortgage clause, and applying to all the parties to the policy in the manner therein indicated. The mortgage clause also provides, in keeping with the requirement of section 2596 of the Code of 1906, which was operative at the time the insurance contract was made, that: "Whenever this company shall pay mortgagee, or trustee, any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thoroughly subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay the mortgagee or trustee the whole principal due or to grow due on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage, and of all such other securities; but no subrogation shall impair the right of the mortgagee or trustee to recover the face amount of his claim."

We do not set out in full the other provisions of the mortgage clause, for the reason that the other provisions are not in any way involved in the decision of this case. Although Burton Bridges had no title to the property in question, it affirmatively appears that the interest acquired by Bacot in the property was under a valid deed signed by both Burton Bridges and his wife, Emily Bridges, containing, in a separate agreement, a defeasible clause; in other words, the interest of Bacot in the property at the date of the insertion of the mortgage clause is placed beyond question, and the mortgage clause, coupled with the written agreement to reconvey, all show conclusively that as between the parties the transaction was treated as a mortgage.

The policy of insurance covered a period of time beginning on January 17, 1907, and ending on January 17, 1908, and the mortgage clause was coextensive in point of time with the original insurance policy. Some time in December, 1907, while the policy was in full force, the building covered by the policy was totally destroyed by fire. All the requirements of the policy as to notice of loss, proofs, etc., were duly made, and demand made on the insurance company by both parties for such proportionate part of the value of the insurance as each claimed they were entitled to. The insurance company denied any liability under the policy. Hence the suit uniting all parties as plaintiffs. The second count is much the same as the first. It alleges that the title to the property is in Emily Bridges, the wife of Burton Bridges, and that the building insured was occupied by them as a homestead. It further alleges that it was the intention of Burton Bridges to take out the insurance in the name of Emily Bridges, but that without his fault and by accident and mistake the policy was written in the name of Burton Bridges, instead of his wife. There is no allegation that the insurance company knew of the condition of the title and waived it in any way. The second count demands the balance of the insurance, being $187 after allowing the sum of $512.91 to be paid to Bacot; that being the conceded amount of his interest. The declaration was demurred to and many grounds assigned. We simply state those we deem material. The demurrer assigns for causes: (1) That the declaration shows that the policy of insurance was issued to Burton Bridges, and not Emily Bridges, and therefore Emily Bridges is improperly made a party plaintiff; (2) that the declaration shows that the title to the property is in Emily Bridges, and not Burton Bridges, the insured, and because of this the policy is void, as Burton Bridges was not the "sole and unconditional owner" of the property, as it was provided in the policy that he should be in order to claim the benefit of the insurance; (3) because the policy was issued on the 17th day of January, 1907, and the

property covered by the policy had been conveyed to E. M.
Bacot by Burton and Emily Bridges long prior to that time, to
wit, on the 17th day of December, 1905, and therefore there
was no title in either of them at the date of the insurance;
(4) because the declaration and policy show that the policy was
void at the time of its issuance by reason of the failure of Bur-
ton Bridges to be the sole and unconditional owner of the
property, and therefore there could be no right accruing to
Bacot as mortgagee under the mortgage clause of this void
policy; (5) because it is not shown that E. M. Bacot is a mort-
gagee or grantee, nor that Burton and Emily Bridges are mort-
gagors or grantors in any mortgage or deed in trust, but that
Bacot was the owner of the property intended to be covered by
the policy, and, not being the insured, had no right of action.
These issues thus raised by demurrer sufficiently present all
questions in the case.    The trial court sustained the demurrer
and dismissed the suit from which judgment an appeal is prose-
cuted.

The first question which we shall consider is whether the
policy in favor of Burton Bridges ever attached by reason of
the clause making the policy void "if the interest of the insured
in the property be not truly stated," or "if the interest of the
insured be other than unconditional and sole ownership."    We
do not conceive the question in this case to depend at all on
whether or not the husband had an insurable interest in the
property on account of his homestead rights; but the question
is whether the terms of the policy covered any such interest.
The condition on which the policy is given any validity by the
contract of insurance is that the insured is the unconditional
and sole owner, and yet the declaration itself shows that he
never was the owner.    In the case of *Groce v. Phœnix Ins. Co.*,
94 Miss. 201, 48 South. 298, this court said in regard to this
clause that "it is very generally agreed, and, indeed, repeatedly
decided in this state, that the clause in an insurance policy as to
sole and unconditional ownership is reasonable and valid, and

that a breach of such stipulation, unless waived by the company, will excuse the company of liability. In the case of *Rosenstock v. Insurance Co.,* 82 Miss. 674, 35 South. 309, the court also upheld this clause. In fact, it may be said that the unconditional and sole ownership clause of insurance policies has been sustained in all courts. What is unconditional and sole ownership is not a question of legal difficulty. In the case of *Rochester German Ins. Co. v. Schmidt,* 162 Fed. 447, 89 C. C. A. 333, quoting from 2 Clement on Insurance, it is said: "An insurance ownership is sole when no one else has any interest in the property as owner, and is unconditional when the quality of the estate is not limited or affected by any condition." The husband or wife, as the case may be, has certain rights given by statute in the homestead; but it is in no sense of the word any kind of ownership, that is to say, where the title is absolute in the one or the other, the right which that other has in the homestead is not ownership in any sense of the word, and it can make no difference under the terms of the policy, so far as avoiding it is concerned, that the insured was the husband of the owner, or that the property was used by them as a homestead at the date the insurance was procured. Burton Bridges represented that he was the unconditional and sole owner of the property, and his title ought to be at least substantially as represented. The contract of insurance was with him alone, and he alone can recover on the contract if it is a valid insurance contract, and its validity must be determined by the conditions in the contract made with him. It is not shown that he was acting as the agent of his wife, nor is it shown that the insurance company had any knowledge of the true status of the title. While it has been held in the case of *Liverpool Ins. Co. v. McGuire,* 52 Miss. 227, and in the case of *Groce v. Phœnix Ins. Co.,* 94 Miss. 201, 48 South. 298, that this clause had to do not with nice questions of title to be precisely determined, but with beneficial, practical, and equitable ownership, yet this clause deals with ownership of the kind just named, and we have not

found any case that so extends the construction of this clause as to make it comprehend mere rights which a husband or wife may have in a homestead, unless the policy is so worded as to undertake to insure those rights.

Many of the authorities cited by counsel for appellants, in fact most all of them, are merely discussions of the question of whether or not a husband or wife has an insurable interest in the homestead when the title is in the other. This interest is doubtless an insurable interest; but the question in this case is not that. The question here is: Is it permissible for a husband or wife to insure a homestead the title to which is in the other, and represent that the one procuring the insurance is the sole and unconditional owner, and when the risk is destroyed abandon the insurance contract and its conditions as to sole ownership and collect the value of the policy on the idea that he or she, though not the sole owner as represented, yet has an insurable interest in the property because it is his or her homestead? We say not. That was not the contract, nor was it the interest insured. This company might be willing to insure the sole owner of the property, but unwilling to issue a policy on any limited interest which he might have in the property. To so hold would be to substitute a different contract from that which the parties made.

The next question is: If the original policy is void because of a violation of the sole and unconditional ownership clause, thereby making the policy as to the original owner void from its inception, can it be valid as to a mortgage? Let it be remembered that Bacot held a valid and enforceable mortgage on the property at the time the mortgage clause was inserted and on the date it was destroyed; his interest being, as now shown by the pleadings, $512.91. Before discussing this question in its legal aspect, it will be well to consider the terms of the policy in relation to the mortgagee. The policy of insurance was a part of the security which Bacot held on his interest in the property, and it was obtained for that purpose.

Under the mortgage clause of this policy, it was only such interest that Bacot had in the property "as it might appear" that he undertook to insure, and it was only this interest which the contract of insurance undertook to protect. The consideration paid for the policy by the owner is a continuing consideration, day by day, and is not fully earned until the expiration of the full life of the insurance policy. That this is the case and is so understood by the insurance company is evidenced by the clause in the policy which permits either party to cancel the policy on certain conditions therein named, whereupon it becomes the duty of the company to refund a certain proportion of the unearned premium. No additional consideration is required to be paid as a condition for the insertion of the mortgage clause in the insurance policy, nor is any additional risk incurred by the insurance company. The consideration paid by the original insurer constitutes a sufficient and valuable consideration for the contract between the insurance company and the mortgagee, since it imposes no increased hazard; nor does it increase the amount of the insurance contract, but merely imposes upon the insurance company the obligation of paying to the mortgagee, in the place of the insured and out of the proceeds of the policy, such sum, not in excess of the face value of the policy, as the interest of the mortgagee, in the identical thing insured, shall amount to.

When a mortgage clause is inserted in an insurance policy, its effect is limited and controlled by section 2596 of the Code of 1906, and the rights of the parties are determined by the provisions of the above statute, which automatically writes itself into every insurance contract where the insurance company allows a mortgage clause to be inserted. In other words, where an insurance contract is made with the owner of property on which there is a mortgage, and the mortgagor, with the consent of the insurance company, undertakes to have a mortgage clause inserted in favor of the mortgagee, the statute says that such contract "shall have attached, or shall contain the

following mortgage clause," etc., and proceeds to give in detail what this clause shall contain. This, then, irrespective of any mortgage clause inserted by the insurance company to the contrary, constitutes the only mortgage clause that can be placed in the policy. Since the mortgage clause in the policy is in the language of section 2596 of the Code of 1906, we will not incumber this opinion by a reproduction of the statute, as we have already set out the principal parts of the statute as contained in the clause referred to. The rights of the mortgagee under this policy turn upon a construction of this statute, and, if the mortgagee is entitled to recover, it is by virtue of this statute and independent of the provisions contained either in the original policy or the mortgage clause, in so far as same may conflict with the statute.

The effect of this statute is to make the contract between the insurance company and the mortgagee a new and independent contract, which is not in any way dependent upon or subservient to the conditions of the original policy between the owner and the insurance company. It may be that the original policy was void from its inception; but this fact cannot in any way invalidate the independent contract of insurance between the mortgagee and the insurance company, if the mortgagee have really a valid and insurable interest in the subject of the insurance. Under section 2596 the mortgagee does not take by assignment from the original owner of the policy, taking only the rights which the original owner has and subject to all the conditions imposed upon the owner; but the very design and purpose of the statute is to place the insurable interest of the mortgagee on a safer basis than it would be if it were subject to be defeated by all the uncertainties accompanying the taking out of insurance by the owner in stating correctly his title, etc., and the many other conditions imposed by the insurance company, the nonobservance of which work a forfeiture of the policy in so far as the owner is concerned. It is not because the law looks with any special favor on the mortgagee that this

statute was passed securing him from forfeiture of his rights because of a breach of the conditions of the policy on the part of the original insurer. The business of insurance has reached that stage in commercial affairs that it is relied on as a kind of security in multiplied transactions. Men part with valuable property in part reliance on an insurance policy as indemnity against loss. The mortgagee does not live in the property. He knows nothing of the representations made by the insured when obtaining the policy of insurance that would render the policy void because of a breach of its conditions. He knows nothing of any fraud or false swearing which may have been done by the owner. He knows nothing of the hazards incurred by the insured in the use of the property which invalidates same under its terms. In short, he cannot know of the possible violation by the mortgagor of the many conditions imposed on the owner by the insurance company that would defeat a recovery under the policy, and the object of the statute was to relieve this indemnity taken by the mortgagee from its precarious attitude as a security, so liable to be defeated by the fraud, the ignorance, and the carelessness of the mortgagor; and, while leaving it optional with the insurance company whether or not they will insert the mortgage clause, yet, if they do, there can be inserted in it only such conditions of invalidation, as regards the mortgagee, as the statute provides.

In so construing this statute, we are fully aware of the fact that there are cases which construe this clause differently, and hold that if the original policy never attached to the risk, and the policy was therefore void from the beginning, the mortgage must fail; but we do not think the reasoning of those cases is sound, and, while resting on almost the identical clause that is required by our statute to be inserted, yet no statute had required that these clauses be inserted in the policy, as is the case here; but, if this be incorrect, still we cannot agree with those decisions. It seems to us that those decisions wholly misconceive the true principle which should control, and over-

look the fact that the contract of insurance made with the mortgagee is independent; that is, free from the provisions and purposes of the contract with the owner, and made for the purpose of securing the interest of the mortgagee. It is merely a more convenient method, adopted by the company and mortgagee, of effecting an independent insurance through the premiums paid by the original insurer on his contract, without requiring the multiplicity of transactions which would be required by each party, mortgagor and mortgagee, taking out separate policies. To illustrate: A. owns property worth $5,-000 and insures same for $4,000. A. borrows from B. $3,000, and B. requires of A., in addition to a mortgage, that A. keep up an insurance in favor of B. for the sum of $3,000. Were it not for the present method of conducting this business under the mortgage clause provided by the statute, it would be necessary for B. to insure his interest in a separate policy for $3,000, and in order that the insurance might be kept up to the original amount of $4,000 a separate policy would have to be issued in favor of A. for $1,000. Again, at the end of six months, A. pays B. $1,500 of the debt. New policies would have to be issued in order to cover the value of the property, and the amount of A.'s policy increased to $2,500, and B.'s policy reduced to the value of his then interest, to wit, $1,500. It was in order to avoid all these complications that the statute was enacted, making separate and independent contracts of the transactions, yet so arranging it as that both mortgagor and mortgagee, automatically, under one policy, keep insured whatever interest they may have in the subject of the insurance. If the mortgagor have no interest in the property, or if he has so stated his interest as that he forfeits his rights under the policy, but the insurance company is forced, under the policy, to pay the valid interest of the mortgagee, the insurance company is protected under the statute, by being legally subrogated to all the rights of the mortgagee as against the mortgagor. By the terms of the statute, so construed, complications are

eliminated, and justice worked out to all parties. The following cases are in conflict with this view: *Hanover Fire Ins. Co. v. Nat. Exchange Bank* (Tex. Civ. App.), 34 S. W. 333; *Gennessee Falls Sav. Bank v. U. S. Fire Ins. Co.,* 16 App. Div. 587, 44 N. Y. Supp. 979; *Baldwin v. Insurance Co.,* 105 Iowa, 379, 75 N. W. 326. Before we had any statute on this subject, this court held in the case of *East v. Insurance Association,* 76 Miss. 697, 26 South. 691, that this mortgage clause constituted a new and independent contract, and the mortgagee might recover as to his interest without reference to any condition imposed upon the owner by the policy. See, also, the cases of: *Phœnix Ins. Co. v. Omaha Loan & Trust Co.,* 41 Neb. 834, 60 N. W. 133, 25 L. R. A. 679; *Magoun v. Firemen's Fund Ins. Co.,* 86 Minn. 486, 91 N. W. 5, 91 Am. St. Rep. 370; *Oakland Home Ins. Co. v. Bank of Commerce,* 47 Neb. 717, 66 N. W. 646, 36 L. R. A. 673, 58 Am. St. Rep. 663.

If, then, the contract between the mortgagee and the insurance company is a wholly independent contract from that of the original owner or mortgagor, how can it be that any but the conditions contained in the mortgagee's contract affect his rights? His rights are independent, not derivative from the mortgagor's contract. Under this independent contract, he is not a mere appointee of the mortgagor to receive the proceeds of the policy, in case of loss, by virtue of and under the contract of the mortgagor, but the mortgagee gets an independent right, an independent contract with the insurance company, whereby the insurance company insure his individual interest in the property. In the case of *Insurance Company v. Bohn,* 65 Fed. 165, 12 C. C. A. 531, 27 L. R. A. 614, a case expressly approved by this court in the case of *Rosenstock v. Insurance Co.,* 82 Miss. 674, 35 South. 309, it is expressly held, in construing a mortgage clause almost identical with the one attached to this policy, that, even if the original policy issued to the owner was void from its inception, that in no way affected the right of the mortgagee in a valid mortgage to collect the value of

his interest in the property under this independent contract as mortgagee with the insurance company. The question in the *Bohn case, supra,* was this: Certain persons, being the sole owners of the capital stock of a corporation, procured a policy of insurance on its property in their individual names. The policy contained the usual unconditional and sole ownership clause. The property was under mortgage, and the policy of insurance had inserted in it the union mortgage clause, required to be inserted in this policy by the statute. Subsequently the property was destroyed by fire, and the questions of this case were: First, was there a violation of the sole and unconditional ownership clause so as to prevent the original policy from ever attaching? And, second, if the original policy never attached because of a breach of this condition, can the mortgagee recover on his contract? The court held that the sole owners of the capital stock of a corporation have not the sole and unconditional ownership of the corporate property within the meaning of an insurance policy, which is void unless they have such ownership; but the court further held, in regard to the mortgagee, as follows, viz.: "But the plaintiffs in error say that, although the indemnity of the blameless mortgagee is protected by this contract against any act or neglect of the mortgagors subsequent to the issue of the mortgage clause, yet any prior act or neglect of theirs, which excludes their interest from insurance under the policies, precludes the mortgagee from obtaining any indemnity under this mortgage clause. Before we assent to a construction of this contract so narrow and subtle, it will not be uninstructive to notice the history and purpose of this clause, and the situation of these parties when they made it their contract. We all know that twenty years ago a contract between a mortgagee and an insurance company, like that before us, was novel and rare. At that time the customary method of indemnifying against loss by fire was to indorse upon the policy the words, 'Loss, if any, payable to ———, mortgagee, as his interest may appear,' or words of similar import. Today such an indorsement is

rare, and a contract similar to the mortgage clause before us is in general use. Why this change? The reason is not far to seek. The old indorsement made the mortgagee a simple appointee of the mortgagor, and put his indemnity at the risk of every act or neglect of the mortgagor that would avoid the original policy in his hands. Indemnity so precarious, so liable to be destroyed by the ignorance, carelessness, or fraud of the mortgagors, was not satisfactory to the mortgagees; and they proceeded to make contracts with the insurance companies similar to that before us, for the purpose of securing indemnity to their interests that should not be affected by any act or negligence of the mortgagors.   *   *   *   Our conclusion is that the effect of the union mortgage clause, when attached to a policy of insurance running to the mortgagor, is to make a new and separate contract between the mortgagee and the insurance company, and to effect a separate insurance of the interest of the mortgagee, dependent for its validity solely upon the course of action of the insurance company and the mortgagee, and unaffected by any act or neglect of the mortgagor, of which the mortgagee is ignorant, whether such act or neglect was done or permitted prior or subsequent to the issue of the mortgage clause."

In line with the case above quoted from are the cases of *Insurance Co. v. International Trust Co.,* 71 Fed. 88, 17 C. C. A. 616, and *Hartford Ins. Co. v. Olcott,* 97 Ill. 439, and the case of *Westchester Fire Ins. Co. v. Coverdale,* 48 Kan. 446, 29 Pac. 682; 2 Cooley's Briefs, 1520. In the last case cited above, the court says, in construing the mortgage clause: "The rules laid down in the authorities cited have no application, however, to a case where a provision has been inserted in the policy which places the mortgagee upon another and a different footing from that of a mere assignee or appointee to receive the loss. The mortgage clause was agreed upon for this very purpose, and created an independent and a new contract, which removes the mortgagees beyond the control or the effect of any

act or neglect of the owner of the property, and renders such
mortgagees parties who have a distinct interest separate from
the owner, embraced in another and a different contract.    The
tendency of the recent cases is to recognize these distinctions,
and thus protect the rights of the mortgagee, when named in
the policy, and the interest of the owner and of the mortgagee
are regarded as distinct subjects of insurance.    *Excelsior Fire
Ins. Co. v. Royal Ins. Co.,* 55 N. Y. 343, 14 Am. Rep. 271;
*Insurance Company v. Allen,* 43 N. Y. 892, 3 Am. Rep. 711."
This same rule is re-announced in the case of *Insurance Co. v.
International Trust Co.,* 71 Fed. 88, 17 C. C. A. 616.

We unhesitatingly hold that the contract of Bacot with the
insurance company as mortgagee was an independent contract,
dependent for its validity alone upon the conditions placed by
the statute in the mortgage clause, and unaffected by any condi-
tions which invalidated the policy as to the mortgagor, whether
prior or subsequent to the insertion of the mortgage clause.
Our views of the mortgage clause can be stated in no better
language than it is put in the case of *Hastings v. Westchester
Fire Ins. Co.,* 73 N. Y. 141:    "The intent of this clause was
that in case, by reason of any act of the mortgagors or owners,
the company should have a defense against any claim on their
part for a loss, the policy should nevertheless protect the in-
terest of the mortgagees, and operate as an independent insur-
ance of that interest, and indemnify them against loss resulting
from fire, without regard to the rights of the mortgagors under
the policy; and, to effectuate that intention, we should hold
that, as against the mortgagees, the defendant cannot set up
any defense based upon any act or neglect of the mortgagors,
whether committed before or after the issuing of the policy, or
the making of the agreement between the company and the
mortgagees.    *    *    *    The intent of the clause was to make
the policy operate as an insurance of the mortgagors and the
mortgagees separately, and to give the mortgagees the same
benefit as if they had taken out a separate policy, free from

the conditions imposed upon the owners, making the mortgagees responsible only for their own acts. * * * This provision, in case the policy were invalidated as to the mortgagors, made it, in substance, an insurance solely of the interest of the mortgagees by direct contract with them, unaffected by any questions which might exist between the company and the mortgagors."

It is next argued that this case should be affirmed, if for no other reason than because there is a misjoinder of parties, and the cases of *Lowry v. Insurance Co.,* 75 Miss. 43, 21 South. 664, 37 L. R. A. 779, 65 Am. St. Rep. 587, and *East v. Insurance Co.,* 76 Miss. 697, 26 South. 691, are cited as authority for this position. It is undoubtedly true that neither Emily Bridges nor Burton Bridges have any interest in this suit, and are therefore improperly joined; but it is also true that the question of whether or not they did have an interest, and the manner in which they should assert that interest, was one of the questions to be litigated in the case, and the court can now eliminate them on motion, or control the matter by instructions, and thus dismiss them from the case.

It is further argued that Bacot, the mortgagee, cannot maintain this suit because the amount of his interest is less than the policy, and the *East case* and *Lowry case,* cited above, are relied on as authority for this proposition. We do not think those cases are in point at all. In the present case, though Bacot's interest is less than the face of the policy, yet, as mortgagee, his is the only valid liability under the policy. This being the case, all that is due under the policy is due to him "as his interest may appear," and, being the only interested party, of course, he is the only one who can sue. This was not the case in either of the two cases cited above.

*Reversed and remanded.*