KENTUCKY VERMILLION MINING & CONCENTRATING CO. v. NORWICH UNION FIRE INS. SOC.

(Circuit Court of Appeals, Ninth Circuit. June 19, 1906.)

No. 1,291.

1. EVIDENCE—PAROL EVIDENCE—INSURANCE POLICY—TERMS.

A policy on a concentrating plant warranted that at all times when the property should be idle a constant day and night watchman should be kept on duty, and declared that the assured was "privileged to make alterations, additions and repairs incidental to the business, to remain idle subject to the conditions of the watchman's clause." *Held*, that the term "watchman's clause" was neither indefinite nor uncertain, and that parol evidence was therefore inadmissible to show that such term had a well-defined and understood meaning by custom and usage in the insurance business, together with what such meaning was.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 2104.]

2. INSURANCE—VACANCY PROVISION—REASONABLENESS.

A provision of a fire policy that if the property be idle or shut down for more than 30 days at any one time notice must be given to the company, and permission to remain idle for such time must be indorsed on

the policy or it should immediately cease and determine, was not objectionable for unreasonableness.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 759.]

3. SAME—WAIVER—EVIDENCE.

Where a policy on a concentrating plant provided that it should be void if the property was permitted to remain vacant for more than 30 days at a time without the consent of the insurer indorsed thereon, parol evidence that the insurer had knowledge that the property insured was idle during the life of an immediately preceding policy, and that insurer had made inquiries as to the status of the property, was inadmissible to show a waiver of such clause.

4. EVIDENCE—PAROL EVIDENCE—PAROL NEGOTIATIONS.

Where a policy was delivered and accepted, all parol negotiations, understandings, and agreements were merged in the written contract, and could not be controlled, modified, or changed by parol.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 1818–1824.]

5. INSURANCE—CONDITIONS—BREACH—FORFEITURE.

Where insured, the owner of a concentrating plant, permitted the same to remain idle for more than 30 days at one time without obtaining the consent of the insurer, the policy thereby terminated by its express provisions.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 759.]

6. SAME—PREMIUM—RETURN.

Where the premium on a fire policy was paid by insured on delivery of the policy, insurer's failure to return such premium before action brought did not amount to a waiver of its right to forfeit the policy for noncompliance of the insured with the positive terms of the policy.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§ 1041–1055.]

7. APPEAL—THEORY OF CAUSE—BURDEN OF PROOF.

A party who with the acquiescence of his adversary assumes the burden of proof of an issue will be held to that position on appeal.

[Ed. Note.—For cases in point, see vol. 2, Cent. Dig. Appeal and Error, § 1064.]

8. INSURANCE—WARRANTIES—COMPLIANCE—BURDEN OF PROOF.

Where insured warranted that, if the property described in the policy should be idle or inoperative, a constant day and night watchman should be kept on duty, the burden of proof, in an action on the policy, that insured had complied with such provision, was on it.

9. SAME—EVIDENCE.

Where insured warranted to keep a night and day watchman on duty whenever the plant should be idle or inoperative, proof of the presence of the watchman for 30 days prior to the date of the fire was insufficient to show a compliance with the warranty.

In Error to the Circuit Court of the United States for the Eastern Division of the Eastern District of Washington.

This is an action upon a fire insurance policy to recover for a loss alleged to have been sustained thereunder. The amended complaint, upon which the case was tried, shows that plaintiff, a corporation of the state of Washington, owned certain buildings and machinery situated therein (a concentrating plant) within the state of Montana; that upon May 1, 1902, defendant issued a policy of insurance in the sum of $5,000 against loss by fire thereon, which policy it is alleged was renewed by the issuance of an identical policy, except as to date of commencement and termination of insurance, upon May 1, 1903; that on August 15, 1903, during the life of the latter policy, the buildings and machinery insured were destroyed by fire, causing a loss within

the terms of the policy in the full amount covered thereby. A copy of the policy sued upon was attached to the complaint as an exhibit. Attached to and made a part of the policy was a typewritten slip, which contained the following material provisions: "Privileged to make alteration, additions and repairs incidental to the business, to remain idle subject to the conditions of the watchman's clause, and to use coal oil and electricity for lights. Warranted by assured that the plant will not be operated during the life of this policy except upon notice to this company and the payment of additional premium. Warranted at all times when the property herein described shall be idle or inoperative, a constant day and night watchman shall be kept on duty; and provided that if such property be idle or shut down for more than thirty days at any one time. notice must be given this company and permission to remain idle for such time must be indorsed hereon or this policy shall immediately cease and determine."

In the complaint it is alleged that: "On the 1st day of May, 1902, the property insured by the policy in suit was idle and not in operation, and so continued during all of the time from May 1, 1902, to May 1, 1903, with the knowledge and consent of the defendant. but plaintiff kept a constant day and night watchman on duty in the premises with the knowledge and consent of the defendant. At the time of the issuance of the policy sued upon, and at all time, until the destruction of the property by fire, the property continued idle and inoperative, with the knowledge and consent of the defendant, but plaintiff kept a constant night and day watchman on duty in said premises. It was understood and agreed between plaintiff and defendant, at the time of issuing the policy, that the property might remain idle and inoperative, but in charge of a constant night and day watchman, and that the policy should continue in force and effect notwithstanding. Both parties to the contract understood, at the time of the issuance of said policy, that to be the true intent and meaning of the policy. Both parties had that understanding throughout the life of the policy, and after the destruction of the property by fire, and until this suit was brought. The provisions of the policy in suit means in insurance circles and amongst insurance men, and is understood to mean, that the insured property may remain idle and inoperative during the life of the policy, if a constant night and day watchman be kept on duty by the insured." The defendant admitted the issuance of the policy, the loss. and that it was notified thereof; that proper proofs of loss were made out and forwarded it; that the property insured was idle and inoperative when the policy sued on was issued and remained so until the time of the loss. All other allegations save those merely formal were denied. It set up as an affirmative defense that the property insured was. at the time of the fire which caused the loss, and continuously for more than 90 days prior thereto had been, idle and inoperative, and that no notice thereof was given defendant. and no permission to remain idle indorsed upon the policy; that the policy was therefore void, and on May 4, 1904, it had tendered back the premium paid. With the exception of the making of the tender on May 4, 1904, and the remaining idle, the allegations of the affirmative defense were denied by plaintiff's reply. The cause was at issue upon: (1) The meaning in insurance circles and among insurance men of the term "watchman's clause." as used in the policy sued upon; and (2) if its meaning was other than plaintiff contended, the waiver of that clause by the defendant.

In order to sustain the issue upon its part the plaintiff offered to read in evidence the deposition of John W. Luke, defendant's agent who issued the policies of 1902 and 1903. A question relating to the negotiations regarding the policy of 1902 was objected to, upon the ground that anything connected with the issuance of the policy of 1902 was immaterial in the present action, a suit upon the policy issued in 1903. The objection presented the questions whether evidence was receivable to show the trade meaning of the clause in the policy above quoted, and whether a waiver of the clause could be shown by parol. The objection was sustained. The plaintiff then made sundry offers of proof, which are set out in the assignments of error, which were rejected. The plaintiff then introduced evidence tending to prove that it had kept a constant day and night watchman upon the premises insured during

the life of the policy, and that defendant had not kept its tender good to return the premium, and rested. The defendant declined to offer any evidence, whereupon the plaintiff moved that the jury be instructed to render a verdict in its favor, on the ground that defendant had not kept its tender good. The motion was denied, and the court then directed the jury to return a verdict in favor of the defendant.

Graves & Graves and E. H. Belden, for plaintiff in error.

Goodfellow & Eells and Happy & Hindman, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after making the foregoing statement, delivered the opinion of the court.

Did the court err in refusing to allow parol evidence to be admitted to explain the meaning of the term "watchman's clause"?

Plaintiff in error does not claim that evidence of a usage or custom may be received to control or vary the positive stipulations of a written contract, or to contradict them, but its contention is that the phrase "watchman's clause" is a trade term, which has a well-defined and understood meaning by custom and usage in the insurance business, and that the courts in construing the policy must ascertain the meaning of that term in the insurance business in order to arrive at the intention of the contracting parties. It is further claimed by the plaintiff in error, independent of the "question of trade, custom and usage" that the court erred in rejecting plaintiff's offer to prove by parol that the clause "warranted at all times" and concluding with the words "this policy shall immediately cease and determine" is a stock clause placed on all insurance policies issued on the Pacific Coast, while the permission "to remain idle," subject to the conditions of the "watchman's clause," was one peculiar to this risk, and only intended to be applied to manufacturing plants which were in operation at the time the policy was issued, and provided for a contingency that might thereafter arise. It further claims that the policy was ambiguous, not only from the language used in the policy, but also from the condition of the parties.

We are of opinion that the court did not err in excluding parol testimony as to the meaning of the term "watchman's clause." There were no words or phrases used therein which required any parol evidence in order to explain their meaning. The contract was in writing, and was, in its entirety, susceptible of a reasonable construction by the court. The rule is well settled that:

"Where a written contract is susceptible on its face of a plain and unequivocal interpretation, resort cannot be had to evidence of custom or usage to explain its language or qualify its meaning." Hunt v. Fidelity & C. Co., 99 Fed. 242, 245, 39 C. C. A. 496.

Having "satisfied ourselves that the policy is susceptible of a reasonable construction on its face, without the necessity of resorting to extrinsic aid, we have at the same time established that usage or custom cannot be resorted to for that purpose." The Insurance Companies v. Wright, 1 Wall. 456, 470, 17 L. Ed. 505.

The decisions of the courts upon the questions in dispute between the respective parties have not been entirely uniform. In Barnard v. Kellogg, 10 Wall. 383, 390, 393, 19 L. Ed. 987, the court said that, while it would be hard to reconcile all the cases, "it may be safely said they do not differ so much in principle, as in the application of the rules of law. The proper office of a custom or usage in trade is to ascertain and explain the meaning and intention of the parties to a contract, whether written or in parol, which could not be done without the aid of this extrinsic evidence. It does not go beyond this, and is used as a mode of interpretation on the theory that the parties knew of its existence, and contracted with reference to it. It is often employed to explain words or phrases in a contract of doubtful signification, or which may be understood in different senses, according to the subject-matter to which they are applied. But if it be inconsistent with the contract, or expressly or by necessary implication contradicts it, it cannot be received in evidence to affect it." In the course of the opinion several cases were cited, and it was directly held that:

"A clear, certain, and distinct contract is not subject to modification by proof of usage. Such a contract disposes of all customs by its own terms, and by its terms alone is the conduct of the parties to be regulated, and their liability to be determined. * * * A usage, to be admissible, must not conflict with the settled rules of law, nor go to defeat the essential terms of the contract."

See, also, Lillard v. Kentucky D. & W. Co. (C. C. A.) 134 Fed. 168, 173, and authorities there cited.

Even if it should be conceded that the term "watchman's clause" should not be held to include the words after the last proviso requiring notice to the company and permission to remain idle to be indorsed upon the policy, it is difficult to see how the plaintiff in error could be benefited thereby. If oral testimony had been given to the effect that the watchman's clause only referred to the keeping of watchmen on duty, this would not annul the latter provision; that would remain as an independent proviso, and would have to be construed as such. A written contract solemnly entered into and executed by the parties to it must bind the parties. Courts do not make contracts, but interpret and construe them whenever any question arises as to what are their terms and conditions. Petit v. German Ins. Co. (C. C.) 98 Fed. 800, 804. The proviso "that if such property be idle or shut down for more than thirty days at any one time notice must be given this company and permission to remain idle for such time must be indorsed hereon or this policy shall immediately cease and determine," must be construed—whether considered as a part of the watchman's clause, or as an independent condition of the contract—according to the sense and meaning of the terms which the parties used. The language is clear and unambiguous, and must be taken in its plain, ordinary, and popular sense, and, so construed, it is fatal to the right of recovery by the plaintiff in error, as it is admitted by it that it was not complied with. It was within the power of the defendant in error to insist upon such a provision, and it cannot be claimed that the terms thereof were unreasonable.

In Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, 462, 14 Sup. Ct. 379, 38 L. Ed. 231, the court said:

"The terms of the policy constitute the measure of the insurer's liability, and in order to recover the assured must show himself within those terms, and if it appears that the contract has been terminated by the violation, on the part of the assured, of its conditions, then there can be no right of recovery. The compliance of the assured with the terms of the contract is a condition precedent to the right of recovery. If the assured has violated or failed to perform the conditions of the contract, and such violation or want of performance has not been waived by the insurer, then the assured cannot recover. It is immaterial to consider the reasons for the conditions or provisions on which the contract is made to terminate, or any other provision of the policy which has been accepted and agreed upon. It is enough that the parties have made certain terms conditions on which their contract shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made. * * * It is entirely competent for the parties to stipulate, as they did in this case, 'that this policy should be void and of no effect, if, without notice to the company, and permission therefor indorsed hereon, * * * the premises shall be used or occupied so as to increase the risk, or cease to be used or occupied for the purposes stated herein * * * or the risk be increased by any means within the knowledge or control of the assured.' * * * These provisions are not unreasonable. * * * These terms and conditions of the policy present no ambiguity whatever. The several conditions are separate and distinct, and wholly independent of each other."

In Delaware Ins. Co. of Philadelphia v. Greer, 120 Fed. 916, 921, 57 C. C. A. 188, 61 L. R. A. 137, the court said:

"The obvious meaning of their plain terms is not to be discarded for some curious hidden sense which nothing but the exigency of a hard case and the ingenuity of an acute mind would discover. Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken in their plain, ordinary, and popular sense." Kiesel & Co. v. Sun. Ins., 88 Fed. 243, 246, 31 C. C. A. 515; McGlother v. Providence M. Ac. Co., 89 Fed. 685, 689, 32 C. C. A. 318; Brown v. United States Casualty Co. (C. C.) 95 Fed. 935, 956.

The court did not err in refusing to allow the plaintiff in error to introduce parol testimony to the effect that the defendant had knowledge or notice that the property insured was idle during the life of the first policy, or in rejecting the other offers as to the inquiries made by the company or its officers or agents as to the status of the property, for the avowed purpose of showing, or attempting to show, a waiver or forfeiture by the insurance company of the clause under consideration. The second policy was not a mere continuation of the first, although in its terms and conditions it was identical with the first, except as to dates. It was not in any manner dependent upon any acts or conduct of the parties under the first policy. The minds of the respective parties met, upon the issuance of the policy by the insurance company and the payment of the premium by the insured. The second policy then became a new, separate, and independent contract between the parties.

In Brady v. Northwestern Ins. Co., 11 Mich. 425, 444, the court said:

"We have no doubt that each renewal of the policy was a new contract. Each was upon a new consideration, and was optional with both parties. At the expiration of the year over which the original policy extended, the obligation of the insurer was ended, and it was only by the concurrence of the will of both parties that the obligation could be continued. This concurrence is manifested by the payment of a consideration by the one party and a renewed promise by the other, and an obligation revived or continued under such circumstances is an original obligation. It must be asked for by the one, and may be assumed or refused by the other, and the policy, which is its evidence, is therefore only continued by the positive act of both parties."

To the same effect, see Hartford Fire Ins. Co. v. Walsh, 54 Ill. 164, 5 Am. Rep. 115; 16 Am. & Eng. Ency. L. (2d Ed.) 868, and authorities there cited.

The second policy, as delivered and accepted, must therefore be presumed to express the entire contract between the parties. The rule is well settled that all parol negotiations, understandings, and agreements are merged in the written contract, and are not to be controlled, modified, or changed by parol evidence in relation thereto. Union Nat. Bank v. German Ins. Co., 71 Fed. 473, 476, 18 C. C. A. 203, and authorities there cited; Blake v. Pine Mountain I. & C. Co., 76 Fed. 624, 654, 22 C. C. A. 430, and authorities there cited; New York Life Ins. Co. v. McMaster, 87 Fed. 63, 70, et seq., 30 C. C. A. 532, and authorities there cited; McMaster v. New York Life Ins. Co., 99 Fed. 856, 863, 40 C. C. A. 119; Northern Assurance Co. v. Grand View B. A., 101 Fed. 77, 83, 41 C. C. A. 207; Id., 183 U. S. 308, 321, 22 Sup. Ct. 133, 46 L. Ed. 213.

No fraud or imposition was attempted to be shown, and it must be presumed that the plaintiff in error read and understood the plain and positive terms of its agreement in the policy, and well knew that its failure to comply with its promissory warranty would at once avoid the policy and relieve the defendant from liability. It also knew from the express provisions of the policy how to obtain a modification of this warranty. West End Co. v. American Fire Ins. Co. (C. C.) 74 Fed. 114, 117.

It follows from the views we have expressed that proof that the property was idle and vacant at the time the policy was issued would be of no avail to the insured. It would not amount to a forfeiture of the clause, or a waiver thereof by the defendant in error. There was no offer to prove that the defendant in error, or its authorized agents, ever agreed to waive the clause under consideration, or that it, or they, gave permission to the plaintiff in error to leave it idle and unoccupied except upon compliance with the terms of the policy. The plaintiff in error could not have been misled or deceived by any information or knowledge which the defendant in error had as to the previous condition of the property. Under the terms of the policy, if the property remained idle "for more than thirty days at any one time," the policy ceased and terminated, it became void and of no binding force and effect, unless the insured gave notice to the company and obtained permission to leave it idle for a longer time by having such time indorsed on the policy. England v. Westchester Fire Ins. Co., 81 Wis. 583, 51 N. W. 954, 29 Am. St. Rep. 917; Bart-

lett v. The British America A. Co., 35 Wash. 525, 77 Pac. 812; Brehm Lumber Co. v. Svea Ins. Co. (Wash.) 79 Pac. 35, 68 L. R. A. 109; Ranspach v. Teutonia Fire Ins. Co. (Mich.) 67 N. W. 967. Terms of warranty are conditions precedent to the right of recovery and must always, if not waived or forfeited, be complied with by the insured. American Credit I. Co. v. Carrollton F. M. Co., 95 Fed. 111, 112, 36 C. C. A. 671; McKenzie v. Scottish Ins. Co. (Cal. Sup.) 44 Pac. 922, 924.

The premium was paid by the insured upon the receipt of the policy. The failure to return it before this action was brought does not amount to a waiver of the right of defendant in error to forfeit the policy for a noncompliance of the insured with the positive terms of the policy.

In United States Life Ins. Co. v. Smith, 92 Fed. 503, 508, 34 C. C. A. 506, 512, the court said:

"The objection that no defense going to the original invalidity of the contract can be made without tendering back any premium received remains to be considered. This is not a suit by the company for the cancellation of the policy, but is an action by the beneficiary based upon it as a valid contract. The general rule is that, if a risk never attaches under a policy, the premium is not earned, and, if paid, may be recovered, unless the insured has been guilty of fraud. Jones v. Insurance Co.. 90 Tenn. 604, 18 S. W. 260, 25 Am. St. Rep. 706; May, Ins. § 4. But we know of no rule which prohibits the defense here made except upon condition of a previous tender of the premium paid."

See Georgia Home Ins. Co. v. Rosenfield, 95 Fed. 358, 362, 37 C. C. A. 96, et seq., and authorities there cited.

"A waiver cannot be inferred from the insurer's mere silence or nonaction. * * * It may wait until claim is made under the policy, and then allege the forfeiture in denial thereof, or in defense of a suit commenced therefor." 16 Am. & Eng. Ency. L. (2d Ed.) 939, and authorities there cited.

The views we have expressed are conclusive of the questions involved in this case, but there is one other question that ought perhaps to be noticed. The plaintiff in error alleged in its complaint that "plaintiff kept a constant night and day watchman on duty" at the premises insured, which averment was denied in the answer of the defendant in error. The plaintiff in error, assuming it to be essential on its part to prove its averment in this respect, produced testimony to establish the fact, and, failing to obtain sufficient evidence on this point, upon appeal claims that the burden of such proof rested upon the defendant in error. This contention cannot be sustained. The general rule is that "a party who, with the acquiescence of his adversary, assumes the burden of proof of an issue, will be held to that position on appeal." 21 Ency. Pl. & Pr. 668, and authorities there cited. The provision in question was made a warranty, and the burden of proof in regard thereto rested upon the plaintiff in error to prove a compliance upon its part with this provision. Imperial Fire Ins. Co. v. Coos County, supra; American Credit I. Co. v. Wood, 73 Fed. 81, 84, 9 C. C. A. 264; McLoon v. Commercial Ins. Co., 100 Mass. 472, 97 Am. Dec. 116, 1 Am. Rep. 129; Van Wickle v. Insurance Co.,

97 N. Y. 350, 353; Craig v. United States Ins. Co., 1 Pet. (C. C.) 410, Fed. Cas. No. 3,340. There was no proof whatever to show that the watchmen were on duty before June 1st. One watchman testified that he commenced work June 1, 1903, and quit when the mill burned. It was stipulated that the testimony of Branscombe (president of the plaintiff in error) taken in another case might be, and was, admitted, but upon examination it shows that the inquiry there made of Branscombe as to the employment of watchmen was specifically limited to commence August 1st, which was the date of the policy in the case in which he gave his testimony. The hiatus in the testimony is claimed by counsel not to have been noticed by any one at the trial. We do not understand counsel to contend that the proof of the presence of the watchmen for 30 days prior to the time of the fire would be a compliance with the warranty. The law is otherwise.

In Cronin v. Fire Ass'n of Philadelphia (Mich.) 82 N. W. 45, the court said:

"It seems to be claimed that the policy should not be held void if the machinery was being operated within the 10 days immediately preceding the fire, but such is not the law. We have frequently held that the breach of such a condition renders the policy immediately and wholly void, as the following cases cited by counsel show"—citing many authorities.

Our conclusion is that the court did not err in instructing the jury to find a verdict in favor of the defendant

The judgment of the Circuit Court is affirmed.