## NEIL BROS. GRAIN CO. et al. v. HART-FORD FIRE INS. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. October 13, 1924.)

No. 4219.

**1. Trial 180—Federal court without power to withdraw case from jury and enter judgment for defendant on the merits.**

A federal court is without power to withdraw a case from the jury and enter judgment for the defendant on the merits.

**2. Judgment 286—Plaintiff held estopped to question form of judgment.**

Where, under the statutory state practice, which governs in the federal courts under the conformity statute, on failure of plaintiff's proof, the court is authorized to discuss the action or enter nonsuit, plaintiff's counsel in such case, by approving the form of an order for judgment for defendant, instead of one of dismissal or nonsuit, and permitting such judgment to be entered without objection, were estopped to thereafter question the form of judgment.

**3. Insurance 328(6, 14)—Provisions of policy for protection of insurer against the extra hazard created by mortgage of the property or foreclosure proceedings are valid.**

To lessen the interest of insured in the subject of insurance is to increase the hazard, and the hazard is increased by a mortgage of the property, and still further increased by proceedings to foreclose the mortgage, and provisions of the policy for the protection of insurer against such increase of hazard are valid parts of the contract.

**4. Insurance 377(2), 390—Knowledge by insurer of grounds of forfeiture held not to prevent the forfeiture.**

That insurers had notice from the records of a mortgage on the property when the policy was issued, and actual knowledge that because of default the mortgage was subject to foreclosure proceedings, which under its terms avoided the policy, at the time riders were attached in which the foreclosure provision was waived as to the mortgagee, held not to preclude them from setting up such provision as a defense to an action by the insured mortgagor after a loss.

**5. Insurance 387—Waiver· of provision of policy in favor of mortgagee does not affect the contract with the mortgagor.**

A rider attached to a policy, in which a provision therein for forfeiture in case of foreclosure proceedings against the property was waived in favor of the mortgagee, does not inure to the benefit of the mortgagor insurer, or create an estoppel to enforce such provision as to him.

**6. Insurance 397—Stipulation that investigation of loss should be without prejudice held valid and enforceable.**

An agreement between insured and insurer after a loss that there should be no waiver of the rights of either party, by reason of investigation of the loss or appraisal of damages, held valid and binding.

**7. Insurance 328(14) — Provision avoiding policy in case of foreclosure proceedings against the property held valid.**

A provision of a policy, making foreclosure proceedings against the property, with the knowledge of the insured, ground of forfeiture, is not invalid as against public policy.

Morrow, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; J: Stanley Webster, Judge.

Action at law by the Neil Bros. Grain Company and others against the Hartford Fire Insurance Company and others. Judgment for defendants, and plaintiffs bring error. Modified and affirmed.

These several writs of error present no questions of importance, aside from the construction and validity of familiar provisions of the standard form of insurance policy in common use, and the regularity of the proceedings leading up to the entry of the judgments complained of. The facts are substantially as follows:

On the 19th day of May, 1921, three insurance companies, defendants in error here, issued three policies of insurance in favor of the plaintiffs in error, other than the plaintiff in error Hudson, who is assignee for the benefit of the creditors of Neil Bros. Grain Company. The policies covered the same property, consisting of a flour mill, grain elevator, and warehouse buildings, together with furniture, grain, and other merchandise used or stored in the buildings, and were in the form prescribed by the laws of the state. 2 Rem. Comp. Stat. of Wash. 1922, § 7152. Each policy contained the following provisions:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if ' * * * with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed. * * *

"This policy is made and accepted subject to the foregoing stipulations and conditions, and to the following stipulations and conditions printed on the back hereof, which are hereby specially referred to and made a part of this policy, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for. * * * *"

At the time of the issuance of the policies, the insured property was incumbered by a mortgage in favor of one Coolidge, to secure the payment of six promissory notes, aggregating the sum of $22,581.98, dated April 25, 1921, executed by the plaintiffs in error, other than Neil Bros. Grain Company and its assignee. On August 23, 1921, rid-

ers or mortgage clauses were attached to the several policies, containing the following provisions:

"Loss or damage, if any, under this policy, on buildings only, shall be payable to Dolph Coolidge, trustee for mortgagees, or assigns, mortgagee (or trustee), as interest may appear. Subject to all the terms and conditions hereinafter set forth in this rider, this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy."

It was further provided that if the insurance company should pay the mortgagee or trustee any sum for loss or damage under the policy, and claim that, as to the mortgagor or owner, no liability therefor existed, the insurance company should be subrogated to all the rights of the party to whom such payment was made. At the date of the issuance of the policies and the execution of the riders or mortgage clauses, one of the notes secured by the mortgage, and interest on the remaining notes, were overdue, and the mortgage was subject to foreclosure. On November 22, 1921, proceedings were commenced in a state court to foreclose the mortgage, and the insured had notice thereof. The defendants in the foreclosure proceeding interposed the defense that there was an absence and failure of consideration for the notes and mortgage, and that issue has not been determined. On the 25th day of April, 1922, the insured property was damaged and destroyed by fire. On the first day of June, 1922, the insurance companies and the insured entered into an agreement, wherein it was stipulated that any action taken by the insurance companies in investigating the cause of the fire, or in investigating or ascertaining the amount of loss and damage to the property caused by the fire, should not waive or invalidate any of the conditions of the policies, or waive or invalidate any rights of either of the parties thereto. After proofs of loss were furnished, the president of Neil Bros. Grain Company was examined under oath by an adjuster of the insurance companies in reference to the loss, and the insured employed an attorney to represent them on such examination. It further ap-

pears that the policies were issued by the R. J. Martin Company, and that Martin, the president of the company, had knowledge of the foreclosure proceedings. But when such knowledge was gained does not appear, nor does it appear that it was communicated to any other officer or agent of the insurance companies.

The three actions were consolidated for the purposes. of trial, and the foregoing facts appearing at the close of the case made by the plaintiffs in error, the defendants in error moved the court to discharge the jury and enter judgments in their favor, or, in the alternative, for judgments of nonsuit. The court discharged the jury and directed counsel for the defendants in error to prepare orders, submit them to opposing counsel, and present them for signature, without indicating in any manner which part or branch of the motion had been granted. The orders prepared and approved as to form by counsel for the plaintiffs in error were judgments on the merits, adjudging that the plaintiffs take nothing by their action, and that the defendant recover costs. By motion for new trial the plaintiffs in error challenged the power of the court to enter the judgments complained of, but the motion was denied. The several judgments are now before us upon writs of error.

O. C. Moore, of Spokane, Wash., for plaintiffs in error.

E. Eugene Davis, of Spokane, Wash., for defendants in error.

Before GILBERT, MORROW, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge (after stating the facts as above). [1] The power of the court below to withdraw the case ·from the jury and enter judgments on the merits in favor of the defendants in error is the first question discussed by counsel. That no such power exists in a federal court is, we think, settled by the decision of the Supreme Court in Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029. But it does not follow from this· that the judgments should be reversed.

[2] Section 408, 1 Rem. Comp. Stat. of Wash. 1922, provides:

"An action may be dismissed, or a judgment of nonsuit entered, in the following cases:

" * * * 8. By the court, upon motion of the defendant, when, upon the trial, the plaintiff fails to prove a sufficient cause for the jury."

This section establishes a practice or mode of procedure which the federal courts are required to follow under the Conformity Act· (Comp. St. § 1537). Central Transp. Co. v. Pullman's Palace Car Co., 139 U. S. 24–38, 11 Sup. Ct. 478, 35 L. Ed. 55; Coughran v. Bigelow, 164 U. S. 301, 17 Sup. Ct. 117, 41 L. Ed. 442. It was therefore the duty of the court below to dismiss the actions or enter judgments of nonsuit, if, upon the trial, the plaintiffs in error failed to prove a cause sufficient for the jury, and if proper orders were not prepared or submitted. to the court it was the plain duty of the plaintiffs in error to raise the objection at that time, instead of approving the judgments or orders as to form. Furthermore, no motion to modify the judgments was made in the court below, the plaintiffs in error insisting at all times that the case should have gone to the jury upon the facts. For these reasons we are of opinion that the plaintiffs in error are now estopped to question the form of the judgments, but no harm can result from their modification to conform to the· correct practice in such cases. What, if any, benefit the plaintiffs in error can derive from the modification we need not inquire.

It is next contended that the defendants in error are estopped to ·claim a forfeiture because of the foreclosure proceedings. This contention is based upon several grounds:

(1) Because the defendants in error had knowledge of the execution of the mortgage, and that it was subject to foreclosure, at the time of the issuance of the policies, and also had knowledge of the commencement of the foreclosure proceedings, after the same were commenced.

(2) That the plaintiffs in error had no such knowledge at or before the foreclosure proceedings were commenced.

(3) That the mortgage clauses or riders authorized the foreclosure, and the defendants in error are therefore estopped to claim a forfeiture by reason thereof.

(4) That the plaintiffs in error made proofs of loss and incurred expenses by reason of the examination held and conducted by the adjuster.

We will consider these several contentions in the order named. But, before considering them, it might be well to state that there is nothing new or peculiar about a contract of insurance. As said by the Supreme Court in Imperial Fire Ins. Co. v. Coos

County, 151 U. S. 452, 14 Sup. Ct. 379, 38 L. Ed. 231:

"The terms of the policy constitute the measure of the insurer's liability, and, in order to recover, the assured must show himself within those terms, and if it appears that the contract has been terminated by the violation on the part of the assured of its conditions, then there can be no right of recovery. The compliance of the assured with the terms of the contract is a condition precedent to the right of recovery. If the assured has violated or failed to perform the conditions of the contract, and such violation or want of performance has not been waived by the insurer, then the assured cannot recover. It is immaterial to consider the reasons for the conditions or provisions on which the contract is made to terminate, or any other provision of the policy which has been accepted and agreed upon. It is enough that the parties have made certain terms, conditions on which their contract shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made. * * *

"It is entirely competent for the parties to stipulate, as they did in this case, 'that this policy should be void and of no effect, if, without notice to the company, and permission therefor indorsed hereon, * * * the premises shall be used or occupied so as to increase the risk, or cease to be used or occupied for the purposes stated herein, * * * or the risk be increased by any means within the knowledge or control of the assured. * * *' These provisions are not unreasonable. * * * These terms and conditions of the policy present no ambiguity whatever. The several conditions are separate and distinct, and wholly independent of each other."

[3] It is universally recognized in insurance law that to lessen the interest of the insured in the subject of the insurance is to increase the hazard; that the hazard is increased by a mortgage of the property insured, and still further increased by the commencement of proceedings to foreclose. The right of insurance companies to protect themselves against any of these contingencies by contract is everywhere recognized, and it is the plain duty of the courts to enforce the contract as made.

[4] The fact that the defendants in error had notice of the existence of the mortgage, or that it was subject to foreclosure, or that foreclosure proceedings had actually been commenced, constituted no defense to the actions. Thus, in Kentucky Vermillion M. & C. Co. v. Norwich U. F. Ins. Soc., 146 Fed. 695, 77 C. C. A. 121, the policy provided that it should become void, if the property insured remained idle for more than 30 days at any one time, unless the insured gave notice to the company and obtained permission to leave it idle for a longer period, by having the extension indorsed on the policy. The plaintiff offered to prove at the trial that the company had notice and knowledge that the property was idle during the life of the policy, but this court held that such proof was of no avail; that a waiver could not be inferred from mere silence or inaction on the part of the insured; and that it might wait until a claim was made under the policy and then claim a forfeiture by way of defense. See, also, Moller v. Niagara Fire Ins. Co., 54 Wash. 439, 103 Pac. 449, 24 L. R. A. (N. S.) 807, 132 Am. St. Rep. 1115. The plaintiffs in error had notice of the foreclosure proceedings long before the property was damaged or destroyed, and it was not incumbent upon the defendants in error to prove that they had such notice at or before the time the foreclosure proceedings were actually commenced. Delaware Ins. Co. v. Greer, 120 Fed. 916, 57 C. C. A. 188, 61 L. R. A. 137.

[5] The riders or mortgage clauses created new and independent contracts between the insurance companies and the mortgagee. By such contracts the companies waived the stipulation against foreclosure in favor of the mortgagee only. There was no change or modification of the contracts as to the mortgagors, and no waiver, and we are at a loss to know why the waiver in favor of the mortgagee should now inure to the benefit of the mortgagors, or create an estoppel in their favor. As said by the court in Syndicate Ins. Co. v. Bohn, 65 Fed. 165, 178, 12 C. C. A. 531, 546 (27 L. R. A. 614):

"Our conclusion is that the effect of the union mortgage clause, when attached to a policy of insurance running to the mortgagor, is to make a new and separate contract between the mortgagee and the insurance company, and to effect a separate insurance of the interest of the mortgagee, dependent for its validity solely upon the course of action of the insurance company and the mortgagee, and unaffected by any act or neglect of the mortgagor, of which the mortgagee is ignorant, whether such act or neglect was done or permitted prior or subsequent to the issue of the mortgage clause."

In that case actions on the policy were brought by both the mortgagor and the mortgagee. The judgment in favor of the mortgagee was affirmed, but the judgment in favor of the mortgagor was reversed. See, also, Hastings v. Westchester Fire Ins. Co., 73 N. Y. 141; Reed v. Firemen's Ins. Co., 81 N. J. Law, 523, 80 Atl. 462, 35 L. R. A. (N. S.) 343; Glen Falls Ins. Co. v. Porter, 44 Fla. 568, 33 South. 473; Bacot v. Phenix Ins. Co., 96 Miss. 223, 50 South. 729, 25 L. R. A. (N. S.) 1226, Ann. Cas. 1912B, 262; and Allen v. Watertown Ins. Co., 132 Mass. 480.

[6] The claim that defendants in error are estopped because the plaintiffs in error furnished proofs of loss and incurred expense in attending the examination conducted by the adjuster is without merit. The proofs of loss were furnished voluntarily, and the parties expressly stipulated in the policies and by later agreement that there should be no waiver or forfeiture by any requirement, act, or proceeding on the part of the insurance companies relating to the appraisal, or any examination provided for in the contract. That this agreement was valid, see Manheim v. Standard Fire Ins. Co., 84 Wash. 16, 145 Pac. 992.

[7] It is lastly contended that the clause making the commencement of foreclosure proceedings ground for forfeiture is against public policy and void, because the plaintiffs in error thereby bargained away in advance the right to resort to the courts for the protection of their rights. There is no merit in this contention. The foreclosure proceeding was one of the contingencies upon which the policies should terminate and become void, and the right of the companies to so stipulate is not only recognized, but is expressly authorized by law. Such a stipulation does not offend against any rule of public policy.

Upon full consideration we find no error in the record, except in the form of the judgments rendered. These will be so modified as to dismiss the actions without prejudice. As thus modified, the judgments are affirmed.

MORROW, Circuit Judge (dissenting). At the time these policies were issued on May 19, 1921, the insured property had been mortgaged by a mortgage dated April 25, 1921, and executed by the plaintiffs. It was provided in the mortgage that, if default be made in the payment of any of the sums secured by the mortgage, then the balance of unpaid principal and interest should, at the election of the mortgagee, become immediately due without notice, and the mortgage might be foreclosed. The mortgage had been duly filed, recorded, and indexed in the auditor's office of Whitman county, Wash., as a real estate and chattel mortgage, pursuant to law, on June 6, 1921, and from that date was a notice to all the world of the existence and conditions thereof (Remington's Washington Codes and Statutes, vol. 1, § 3662), and became a first lien and prior to all other liens and incumbrances upon such property.

On August 23, 1921, riders were attached to the policies covering buildings, providing in identical terms on all three policies for the security of the trustee or mortgagee, among other things as follows:

"Loss or damage, if any, under this policy, on buildings only, shall be payable to assigns, Dolph Coolidge, trustee, for mortgagees, or mortgagee (or trustee), as interest may appear. Subject to all the terms and conditions hereinafter set forth in this rider, this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy."

In condition 1 it was provided:

"In case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same."

In condition 2 it was provided:

"The mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee), and unless permitted by this policy it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise, this policy shall be null and void."

On November 22, 1921, Dolph Coolidge, as trustee for the holders of the notes hereinbefore mentioned, brought suit in the state court to recover the sum of $22,581.98, the amount of such notes, with interest thereon at the rate of 8 per cent. per annum from the 23d day of April, 1921, until paid. To this complaint the plaintiffs herein interposed a demurrer, which was overruled by

the court. The plaintiffs thereupon answered, denying the material allegations of the complaint, and alleging affirmatively that the notes and mortgage were without consideration, and that plaintiffs had received nothing of value in connection with or on account of said instruments; that there was no competent or other authorization for the execution of said instruments; and that the execution thereof was ultra vires.

At the time the defendants attached the mortgage clause as riders to the policies of insurance on August 23, 1924, the mortgage was subject to foreclosure proceedings, by reason of the default in the payment of the note due July 1, 1921. The defendants had therefore constructive notice of the condition of the mortgage security when the mortgage was filed, recorded, and indexed in the auditor's office in Whitman county, Wash., on June 6, 1921. They had actual notice of the mortgage, and contracted with the mortgagee with full knowledge of its conditions when it attached the mortgage riders to the policies on August 23, 1921, and it conclusively appears by such riders that the defendants contemplated the foreclosure proceedings when they provided in the mortgage clause of the riders that the interest of the mortgagee in the insurance policy should not be invalidated by an act or neglect of the mortgagor or owner of the property by any foreclosure or other proceedings. But it is nowhere provided in the policies of insurance that the policies shall be void in part only; that is to say, that the interest of the mortgagors shall alone be forfeited "if, with the knowledge of the insured, foreclosure proceedings be commenced." The condition is that the *entire policy* should be void "if, with the knowledge of the insured, foreclosure proceedings be commenced." The forfeiture clause is attached to and operates, if at all, with respect to the *entire policy,* and not to a part. The defendants have, by their contract with the mortgagee, expressly waived a forfeiture of the *entire policy,* but they are now insisting upon the validity of that part only which secures the mortgagee.

In some of the cases the forfeiture under this clause of policy has been justified by the courts on the ground that the commencement of the foreclosure proceedings increases the risk of the insurance hazard. With respect to the policy in suit it was expressly provided in condition 2 of the riders attached to the policies in this case that the mortgagee should notify the insurance company of any increase of hazard which should come to the knowledge of the mortgagee, and unless permitted by the policy it should be noted thereon *and the mortgagee on demand should pay the premium for such increased hazard for the term of the use thereof.* If, then, the commencement of foreclosure proceedings increased the insurance hazard, the fault is chargeable under this contract to the mortgagee, who commenced the foreclosure proceedings, and not to the mortgagors, who are resisting such proceedings.

In Insurance Co. v. Norton, 96 U. S. 234, 242, 24 L. Ed. 689, the court said:

"Forfeitures are not favored in the law. They are often the means of great oppression and injustice."

In May on Insurance, it is said, in section 174:

"Having indemnity for its object, the contract is to be construed liberally to that end, and it is presumably the intention of the insurer that the insured shall understand that in case of loss he is to be protected to the full extent which any fair interpretation will give."

In section 175 the author says:

"No rule, in the interpretation of a policy, is more fully established, or more imperative and controlling, than that which declares that, in all cases, it must be liberally construed in favor of the insured, so as not to defeat without a plain necessity his claim to the indemnity, which, in making the insurance, it was his object to secure."

In Michigan State Insurance Co. v. Lewis, 30 Mich. 41, 46, 47, the policy of insurance provided that, if any proceedings for the sale of the insured property should be had, commenced, or taken without the consent of the insurance company, the policy should be void and of no effect. The property had been mortgaged before being destroyed by fire. The company refused payment of the insurance policy after the fire on the grounds, among others, that foreclosure proceedings had been taken, and the mortgagor had neglected to notify the company and obtain its assent. The court below had refused to instruct the jury that the commencement of foreclosure proceedings without the company's consent had voided the policy. Judge Cooley, that much respected and eminent judicial authority, stating the opinion of the Supreme Court of Michigan, said:

"It only remains to be seen whether the institution of the foreclosure proceeding, of itself, and irrespective of any delay what-

ever in giving notice [to the insurance company], relieved the company from further liability. * * * But we are all of the opinion that where insurance is taken upon mortgaged property, and the insurer is notified of the mortgage, and, of course, understands that proceedings may at any time be taken to foreclose it when the mortgage is overdue, as seems to have been the case when this insurance was taken, it would be a most unreasonable and unjust construction of such a provision to hold that, by the mere commencement of foreclosure proceedings, the policy would be annulled. * * * We cannot suppose the insured in this case understood that his contract was liable to be terminated, on the very day it was made, by the act of a third party in beginning the foreclosure of a mortgage of which the insurers were fully advised, and subject to which they had accepted the risk."

In the course of Judge Cooley's opinion he refers to the printed form of the policy and its general conditions, and says:

"The condition appears in a printed form of policy made use of by the company, and probably designed to be sufficiently general in its conditions to answer in all cases. Such a general form cannot be supposed to have had special and exceptional cases particularly in view, and it is therefore more likely to suggest troublesome questions of construction than a contract specially prepared for the case."

The same comment is applicable here, where the conditions are in printed form, numerous, general, and technical, and so framed and indorsed upon the policies by the defendants. It is doubtful if the plaintiffs ever saw the clause under consideration, or, if seen, understood it as meaning what defendants now claim.

But there is a still further and more fundamental objection to this forfeiture. The defendants knew, or ought to have known, when they contracted with the mortgagee for the security of his interest, that the mortgagors were entitled by law to protect their interest in the property in the foreclosure proceedings, and, having paid their insurance premiums and otherwise complied with their insurance contract, they were also entitled to the protection of the insurance contract for their interest.

It appears from the transcript of record that the attorney for the defendants in open court stated that as to the mortgagee, Dolph Coolidge, the insurance companies had not and did not deny liability. He said:

"We would be paying Dolph Coolidge right now, except for the fact that plaintiffs claim this mortgage is void and of no effect. * * * There is no issue in this case between the insurance company and Coolidge. * * * We have agreed and stipulated that we will not wage such defense against Coolidge by reason of our mortgage clause. * * * I have agreed with attorneys for Dolph Coolidge that at the time of determination of this case, if judgment is rendered in favor of the defendants, in other words, if the jury find that" plaintiffs "take nothing, that the judgment may then be entered as between Dolph Coolidge and the insurance companies for the amount we have agreed on as the value of the buildings, without cost. Now, that judgment could be entered now, except for the one fact that Neil Bros. claim that the mortgage clause attached in favor of Dolph Coolidge is void."

How, then, upon this record, can a separate, distinct, and independent contract between the insurers and the mortgagee invalidate the interest of the mortgagors and prevent them from litigating their rights? Are the latter not entitled to the protection of the guaranties of the Constitution that they shall not be deprived of their property without due process of law?

In Insurance Co. v. Morse, 87 U. S. (20 Wall.) 445, 451, 22 L. Ed. 365, the Supreme Court held illegal and void a statute of the state of Wisconsin, by the terms of which, as a condition precedent to the obtaining of permission as a foreign corporation to do business in the state, it should enter into an agreement with the state that such corporation would not remove a suit for trial into the United States circuit or federal courts. The court also held that an agreement executed by the corporation to that effect was invalid. The court declared the law to be that:

"Every citizen is entitled to resort to all the courts of the country, and to invoke the protection which all the laws or all those courts may afford him. A man may not barter away his life, or his freedom, or his substantial rights. * * * In a civil case he may submit his particular suit by his own consent to an arbitration, or to the decision of a single judge. So he may omit to exercise his right to remove his suit to a federal tribunal, as often as he thinks fit, in each recurring case. In these aspects any citizen may no doubt waive the rights to which he may be entitled. He cannot, however, bind himself in advance by an agreement, which may be specifically enforced, thus to forfeit

his rights at all times and on all occasions, whenever the case may be presented."

I am of opinion that it was not the intention of the defendants, when they attached the riders to the policies of insurance providing for the security of the mortgagee, to claim a forfeiture from the mortgagors for the "commencement of foreclosure proceedings" by the mortgagee, pursuant to the conditions of such mortgage. If such intention existed, it was not clearly expressed, and was not known to the plaintiffs.

The validity of the mortgage is not an issue in this court. That question is pending in the state court. The question here was: What was the effect of the "commencement of foreclosure proceedings in the state court" upon the rights of the plaintiffs in the insurance policies? What the effect of a judgment in that court will be, will be determined when that question arises.

I am of the opinion that the judgment should be reversed, with instructions to grant a new trial.