645 So.2d 1311 (1994)
Albert NECAISE
v.
OAK TREE SAVINGS BANK, SSB.
No. 91-CA-00696.
Supreme Court of Mississippi.
November 10, 1994.
Gail D. Nicholson, Chester D. Nicholson, Nicholson & Nicholson, Gulfport, for appellant.
Billy Parlin, Parlin & Murphy, Ocean Springs, for appellee.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
SMITH, Justice, for the Court:
The Circuit Court of Harrison County reversed a judgment rendered by the County Court of Harrison County adjudicating that Albert Necaise was entitled to the sum of $2,200 from insurance proceeds paid in the wake of an oral contingency fee contract entered into with a client, Richard Parker, *1312 whose mobile home was demolished by a tornado on May 19, 1989.
Necaise, an attorney, appeals from an order entered May 28, 1991, by the Circuit Court of Harrison County, sitting in its posture as an appellate court, reversing a decision made by the County Court. The County Court, following a bench trial on an action for declaratory judgment filed by Necaise, had held that Necaise was entitled to an interest in a check issued in the amount of $10,000 by Liberty National Fire Insurance Company to three payees: (1) Richard Parker, the insured; (2) Necaise, Parker's lawyer; and (3) Oak Tree Savings Bank, a lienholder, mortgagee, and loss payee.
Necaise claimed he was entitled to one third (1/3) of the insurance proceeds check issued by Liberty based upon his contingency fee contract with Parker and because a settlement with Liberty was reached largely through his efforts and the efforts of his associate. Necaise maintained that the County Court reached a proper resolution in the case when it allowed "an equitable quantum meruit ... for legal services in representing the mortgagee against Liberty Fire Insurance Company."
Oak Tree, on the other hand, claimed that as a named loss payee on the insurance policy it was entitled to proceeds up to the amount of its outstanding security interest. In this particular case, that would amount to the entire insurance proceeds, since the mortgage balance exceeded the amount of the proceeds.
The lienholder clause endorsement attached to and forming a part of the insurance policy states, in part, as follows:
Any loss payable under this policy shall be paid to Dixie Savings & Loan ... as lienholder, and you [Parker] as interests appear.
In the final analysis, Necaise entered into an oral contingency fee contract with Parker who had executed a security agreement with Oak Tree upon the purchase of a mobile home. Parker was obligated to purchase fire and casualty insurance and named Dixie in a lienholder clause endorsement as loss payee. This entitled Oak Tree to payment of the insurance proceeds up to the amount of the outstanding lien on the mobile home. Hartford Fire Insurance Company v. Associates Capital Corporation, 313 So.2d 404, 407 (Miss. 1975). After a thorough examination of the single issue raised by Necaise, we concur with Oak Tree's position that the law and facts support the reversal by the circuit judge of the county court's ruling; therefore, we must affirm.

STATEMENT OF FACTS
Albert Necaise, hereinafter "Necaise", is a practicing attorney in Gulfport who represented Richard Parker against Liberty National Fire Insurance Company after Parker's mobile home was destroyed by a tornado.
Richard Parker, hereinafter "Parker", is the owner/mortgagor of a mobile home in Saucier which he financed through Oak Tree Savings Bank.
Oak Tree Savings Bank, hereinafter "Oak Tree", is the lienholder on the mobile home, a mortgagee, and a loss payee.
Dixie Savings and Loan, hereinafter "Dixie", is the predecessor in interest to Oak Tree.
Liberty National Fire Insurance Company, hereinafter "Liberty", issued $10,000 worth of fire and casualty insurance on the mobile home and $4,000 on its contents.
Jay Disharoon, hereinafter "Disharoon", was an attorney working as an associate for Necaise during the course of the representation of Parker.
Parker, a resident of Saucier, purchased a mobile home which he financed through Dixie, predecessor in interest to Oak Tree. In consideration of the financing, Dixie (Oak Tree) was granted a security interest in the mobile home. By virtue of the terms of the security agreement, Parker was obligated to purchase a fire and casualty insurance policy. On May 9, 1988, Liberty issued a Mobile Home Dwelling Policy to Parker with liability limits of $10,000 and a Mobile Home Household Contents Policy with liability limits of $4,000. A lienholder clause endorsement attached to the dwelling policy specifically *1313 named Dixie, predecessor in interest to Oak Tree, as loss payee.
On or about May 19, 1989, the mobile home and most of its contents were destroyed by a tornado. At the time of the loss, the outstanding balance on Parker's loan with Oak Tree was $11,680.67. Parker filed a claim with Liberty which Liberty initially refused to pay for nonpayment of premiums. Enter Mr. Necaise and his associate, Mr. Disharoon.
According to the trial testimony, Parker retained Necaise on a contingency fee basis to collect the insurance proceeds from Liberty. Under the terms of their oral agreement, Parker agreed to pay to Necaise a third of any recovery made from Liberty. Necaise, through Disharoon, wrote several letters and made a number of telephone calls to Liberty in an effort to induce the carrier to pay. There was talk of a lawsuit based upon "bad faith" but no suit was filed.
Meanwhile, Oak Tree, unaware that Necaise had been retained by Parker to assist in the collection process, made efforts through its own collectors to collect the insurance proceeds from Liberty. It concentrated primarily, however, upon collecting from Parker who had stopped paying his premiums.
It was the position of Necaise that Liberty, largely through the efforts of Necaise and his associate to settle the matter, agreed to pay $10,000 for the loss of the mobile home, $2033 on the loss of the contents, and $200 living expenses to Parker. Only the $10,000 is at issue in this appeal.
On August 1, 1989, Liberty mailed a draft in the amount of $10,000 to Necaise made payable to "Richard D. Parker and Oak Tree Savings Bank and Attorney Jay Disharoon." On August 14, 1989, Necaise wrote the following letter to Oak Tree:
This letter is to confirm our telephone conversation of August 11, 1989, wherein I advised that I had settled the above captioned case with Liberty National Insurance Company for $10,000.00. As I informed you, the check is made payable to Mr. Richard Parker, to your company, and also to my office. I advised that our fee for representing the interests of the Parkers and Oak Tree Savings on this matter was one-third of the recovered proceeds. I advised you I would be happy to forward you the check endorsed by Mr. Parker and myself, provided you would remit by return mail one-third of the receipts of the check.
Since you are unwilling to do this I shall retain the check in my file until such time as an agreement can be made as to your company sharing in the attorney's fees for making this recovery. [emphasis added]
On August 22, 1989, Oak Tree responded with the following letter to Necaise:
I am in receipt of your letter addressed to Oak Tree Savings Bank, S.S.B., dated August 14, 1989.
As of this date, your client owes my principal the sum of $11,680.67, which is the balance on his loan. If I receive the check from National, properly endorsed by Mr. Parker and your office within 10 days from the date of this letter, we will accept same as payment in full of the loan.
If I do not receive the check endorsed properly in 10 days, I will institute proceedings against Mr. Parker for $11,680.67, plus interest and all costs.
In addition, I will seek a ruling from the Mississippi Bar Association relative to your retention of the check and demanding a fee from an entity you do not [k]now, nor ever have represented.
The trial court heard testimony from three (3) witnesses produced by the plaintiff: (1) Richard Parker, the insured (2) Jay Disharoon, Necaise's associate who handled the case for Parker; and (3) Albert Necaise himself. Oak Tree produced as its only witness Darlene McDonald, a Litigation Collection Manager.
Relevant testimony elicited during direct examination from Albert Necaise concerning his suit for declaratory judgment is quoted as follows:
[BY MR. NECAISE:]
A. That letter was written by me as a result of having previously talked to Ms. Melissa Taylor, and my reason for calling Ms. Taylor, sometime immediately *1314 prior to the 14th, we had gotten a check in from the insurance company, and the check was made payable to Oak Tree Savings and Loan, Richard Parker, and Jay Disharoon, and the check had to be negotiated because I felt that  And Mr. Parker knew that we had a one-third contingency in that check. So, I called Ms. Taylor and I told her that we had the check, that I had gotten the check, and wanted to know how she wanted to do it. That there were several ways that we could do it, if she wanted to give me permission to sign Oak Tree's name, that I would sign it. I would have Mr. Parker sign it, and I would sign it, and I would put it in my trust account. I would deduct a third, and send them a check for six thousand six hundred and sixty-six dollars. She told me they didn't owe it; that Mr. Parker owed it. I said, "No." I said, "You have an interest in it, too." I said, "Now, Mr. Parker may owe you. You know, I'm not saying that by getting six thousand six hundred and sixty-six dollars will make this note  will pay it off. You're going to have to proceed against Mr. Parker for any balance that he's going to leave after we apply this amount on his outstanding indebtedness. But the company wouldn't pay, and apparently ya'll were not doing anything. All you all were doing was requesting Mr. Parker to pay his payments, and not only couldn't he pay his payments, he couldn't even get another place to live." I said, "So, through our efforts, we were able to recover." She said, "Well, we're not paying you." I said, "Okay, and if you want me to, I will send you the check like it is, and then you can cut me a check for a third." She said, "We're not going to do that." So, I wrote her this letter, as it sets there, and I said, "Since you're unwilling to do this, I will retain the check in my file until such time as an agreement can be made as to your cut in the sharing of the attorneys fee for making this recovery." And she had a lawyer write me back and told me, you know, that they didn't  "That he owes the principal sum, and that if he received the check properly endorsed by Parker and me within ten days that he would accept same as payment in full. But that if he did not receive the properly endorsed check within ten days, that he would institute proceedings against Mr. Parker for eleven thousand and six sixty-seven plus interest and all costs and in addition he would seek a ruling from the Mississippi State Bar Association relative to my retention of the check and demanding a fee from an entity that you do not know nor have ever represented." And he sent Mr. Parker a copy of that letter. Well, of course, you know nobody likes  Of course, I took that as, you know, if you don't do this, I'm going to report you to the Bar."
Q. Trying to intimidate you with a Bar complaint?
A. I took that as intimidation. "If you don't do this, the Bar will," and of course, no lawyer  You know, I've been practicing law for twenty-five years. You don't like to get those kind. So, I think that was at the time that I consulted you. I didn't think that I ought to handle it, because I think anytime somebody represents himself he has a fool for a client. That's the reason I employed you and your law partner to represent me on the matter, and as best I remember we had determined that it was best to go on and forward the check to them and file a lawsuit against them to prevent them from filing a Bar complaint. I did not send the check to them because I didn't think they owed me a fee. I still think I'm entitled to a fee.
Q. All right, and pursuant to that, Mr. Necaise, you authorized a suit for declaratory judgment here in front of this court, 
A. Yes, sir.
Q. And we want the Court to declare the rights of the parties; is that right?
A. Exactly.
After hearing all the testimony, the trial court ruled in favor of Necaise. Specifically, he found that the matter had been adjusted and settled as a result of the efforts of both *1315 parties and awarded Necaise two thirds (2/3) of the amount of his contingency fee of one third (1/3) of the recovery or $2,200. (1/3 of $10,000 = $3,333 X 66 2/3 = $2,200).
The circuit judge, in reviewing the county court's decision, concluded as a matter of law "that the Judgment of the County Court cannot be sustained in law or in fact" and held "that the County Court was manifestly wrong in its decision and erred in entering a Judgment in favor of Albert Necaise against Oak Tree Savings Bank, SSB."
Aggrieved Necaise appealed to this Court raising the single issue:

WHETHER THE CIRCUIT COURT ERRED IN REVERSING THE DECISION OF THE COUNTY COURT.

DISCUSSION
Necaise claimed he was entitled to one third (1/3) of the insurance proceeds check issued by Liberty based upon his contingency fee contract with Parker and because a settlement with Liberty was reached largely through his efforts and the efforts of his associate. Necaise maintained that the County Court reached a proper resolution in the case when it allowed "an equitable quantum meruit ... for legal services in representing the mortgagee against Liberty Fire Insurance Company."
Oak Tree, on the other hand, claimed that as a named "loss payee" on the insurance policy it was entitled to proceeds up to the amount of its outstanding security interest which, in this particular case, is the entire amount of the insurance proceeds since the mortgage balance exceeded the amount of the proceeds.
Necaise's complaint for declaratory judgment alleged that Parker signed a promissory note in the amount of $11,339.70 and gave a security interest in the mobile home to the holder of the note. The complaint further stated in that pursuant to the security agreement, Parker purchased a policy of insurance from Liberty that included a "lienholder clause endorsement."
The lienholder clause endorsement attached to and forming part of the insurance policy states, in part, as follows:
Any loss payable under this policy shall be paid to Dixie Savings & Loan ... as lienholder, and you [Parker] as interests appear.
This Court in Hartford Fire Insurance Company v. Associates Capital Corporation, 313 So.2d 404, 407 (Miss. 1975), speaks of two types of mortgage clauses: "[T]he simple `loss-payable' or `open-mortgage clause,' and the `union' or `standard mortgage clause' are known as Mississippi Form 23 and Form 25, respectively, the last of which was incorporated in our statutory law in Mississippi Code Annotated Section 83-13-9 (1972)."
Under a simple "loss-payable" clause in an insurance policy payable to the mortgagee "as his interest may appear," the mortgagee is only entitled to receive the amount due on the mortgage. Where the "standard mortgage clause" is included in the policy, the mortgagee is entitled to the proceeds of the policy. Hartford, 313 So.2d at 407.
The subject matter of Miss. Code Ann. § 83-13-9 (1991) is the standard union mortgage clause which in the past has been construed by this Court "to be a separate contract of insurance entered into between the mortgagee [Oak Tree] and the insur[e]r [Liberty]." Weems v. American Security Insurance Company, 450 So.2d 431, 436 (Miss. 1984) (Weems I).
In United States v. Sentinel Fire Insurance Company, 178 F.2d 217, 227 (5th Cir.1949), the Fifth Circuit Court of Appeals discussed prior decisions of this Court dealing with the effect of a standard union mortgage clause:
In Hennessey v. Helgason, 168 Miss. 834, 151 So. 724, 725 [1934], the Supreme Court of Mississippi explained its position in the Bacot case by saying: "In Bacot v. Phoenix Ins. Co., 96 Miss. 223, 50 So. 729, 25 [1909] L.R.A.,N.S., 1226, Ann.Cas. 1912B, 262, it was held that the mortgage clause of the statute above referred to has the effect of making an independent contract in favor of the mortgagee. In other words, the effect is to issue two policies, *1316 one to the mortgagor [here Parker] for the difference between the mortgage debt and the amount of the policy and the other in favor of the mortgagee [here Oak Tree] to the extent of his debt." [Emphasis in original]
In Weems I, 450 So.2d at 436 we opined: Under such a clause, the mortgagee is entitled to the proceeds of the policy and his right to recover will not be invalidated by the act or negligence of the mortgagor of the insured's property. No act or default of any person other than the mortgagee affect the right of the mortgagee to recover in case of loss. Hartford Fire Insurance Company v. Associates Capital Corporation, 313 So.2d 404, 407 (Miss. 1975). [emphasis supplied]
See also Talman Federal Savings and Loan Association v. American States Insurance Company, 468 So.2d 868, 872 (Miss. 1985).
Moreover, by virtue of Miss. Code Ann. § 83-13-7 (1991), mortgagees are protected in order of priority. That statute reads as follows:

When, by an agreement with the assured or by the terms of a fire insurance policy taken out by a mortgagor, the whole or any part of the loss thereon is payable to the mortgagee or mortgagees of the property for their benefit, the company shall, upon satisfactory proof of the rights and title of the parties, in accordance with such terms and agreement, pay all mortgagees protected by such policy in the order of their priority of claim, as their claims shall appear, not beyond the amount of which the company is liable. Such payments shall be, to the extent thereof, payments and satisfaction of the liabilities of the company under such policy. [emphasis added]
"The general rule of law in insurance cases is that, under a simple `loss-payable' or `open-mortgage clause' in an insurance policy payable to the mortgagee `as his interest may appear,' the mortgagee is only entitled to receive the amount due him on his mortgage out of the funds recovered by or due to the insured." * * * "On the other hand, where the `union' or `standard mortgage clause' is included in an insurance policy, the mortgagee is entitled to the proceeds of the policy, and the mortgagee's right to recover will not be invalidated by the act or negligence of the mortgagor of the insured's property." Hartford, 313 So.2d at 407. See also Nationwide Mutual Fire Insurance Company v. Dungan, 634 F. Supp. 674, 683-84 (S.D.Miss. 1986), affirmed 818 F.2d 1239 (5th Cir.1987).
It is clear from our decisions that the phrase "as its interest may appear" refers to the amount of debt owed to the mortgagee secured by the mortgage or deed of trust. Weems v. American Security Insurance Company, 486 So.2d 1222, 1228 (Miss. 1986) (Weems II), quoting from Couch On Insurance 2d. (Rev. ed.) § 42:696.
"That is, a clause `as his interest may appear' has reference to debts, the phrase `as his interest may appear' meaning merely that the insurer will pay the mortgagee to the extent to which his mortgage is a lien or charge on the premises."
Id. at 1229.
In the case sub judice, it really makes no difference whether the lienholder clause inserted into the present policy is a simple "loss-payable" clause, in which case the mortgagee is entitled to receive the amount due on his mortgage, or the "standard mortgage clause," in which case the mortgagee is entitled to the proceeds of the policy. This is because the outstanding balance on the mortgage with Oak Tree was greater than the amount of the insurance proceeds. Consequently, Oak Tree was entitled to the $10,000.
The statutes and case law in Mississippi make reasonably clear that Oak Tree, as loss payee, was entitled to payment of the insurance proceeds to the extent of its mortgage debt. Since the outstanding mortgage was greater than the proceeds, Oak Tree was entitled to the $10,000 to the exclusion of any monetary interest claimed by Necaise as a result of his contingency fee.
During trial, Necaise freely acknowledged that if Parker did not have any interest in the recovery, Parker could not assign anything to Necaise. Necaise further testified *1317 that he had no contractual relationship with Oak Tree and was fully aware there was a mortgage on Parker's mobile home. Although Necaise was never retained by Oak Tree and while no attorney-client relationship existed between the two, Necaise asserted: "I felt like that I was representing Oak Tree because I got them some money that they had not been able to get at this point." Oak Tree insisted that Necaise never represented their company.
In the final analysis, Parker assigned Necaise an interest in insurance proceeds which Parker didn't have. The law is clear that an assignee, i.e., Necaise, can receive no greater right in the thing assigned than a right equal to that of the assignor, i.e., Parker. Ford v. White, 495 So.2d 494, 497 (Miss. 1986); Indiana Lumbermen's Mutual Insurance Company v. Curtis Mathes Manufacturing Company, 456 So.2d 750, 754 (Miss. 1984). Here Parker had no interest in the insurance proceeds because the balance of his mortgage was greater than the proceeds.
Oak Tree did not have a contractual relationship with Necaise. This fact was conceded by Necaise. Under Mississippi law, the court has no authority to create a contract where none exists. Cf. First National Bank of Vicksburg v. Caruthers, 443 So.2d 861, 865 (Miss. 1983).

CONCLUSION
Necaise entered into an oral contingency fee contract with Parker who had executed a security agreement with Oak Tree upon the purchase of a mobile home. Parker was obligated to purchase fire and casualty insurance and named Dixie in a lienholder clause endorsement as loss payee. This entitled Oak Tree to payment of the insurance proceeds up to the amount of the outstanding lien on the mobile home. The outstanding balance on the mortgage with Oak Tree was greater than the amount of the insurance proceeds. It must follow accordingly that Oak Tree was entitled to the $10,000 to the exclusion on any monetary interest claimed by Necaise as a result of his contingency fee arrangement with Parker. Clearly, Necaise is entitled to an attorney's fee from his client Parker. But, Necaise was never retained by Oak Tree. There was no contractual relationship between Oak Tree and Necaise. Parker assigned Necaise an interest in insurance proceeds which Parker never had, because the balance of his mortgage was greater than the proceeds. The circuit judge correctly reversed the county court's award of attorneys fees to Necaise.
We affirm.
JUDGMENT AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J.
McRAE, Justice, dissenting:
This case involves the question of whether the mortgagee, who is listed on a contract of insurance as having an interest in the said property and has standing to bring suit, takes priority over the reasonable fees of the attorney who took the necessary legal measures in collecting the insurance proceeds. Richard Parker, the insured, clearly had standing to sue Liberty National Fire Insurance Company (hereinafter "Liberty"), and Oak Tree Savings Bank (hereinafter "Oak Tree"), the mortgagee, could have also filed suit against Liberty to recover the proceeds due to them as named mortgagee pursuant to Miss. Code Ann. § 83-13-9 (Supp. 1991). Parker, unlike Oak Tree, proceeded to pursue his rightful recovery from Liberty through the assistance of his attorney, Albert Necaise. I do not dispute that Oak Tree did have a contract of insurance with Liberty according to Weems v. American Security Insurance Company, 450 So.2d 431, 436 (Miss. 1984); however, this contract in no way is over and above or takes precedent over Parker's contract of insurance and because Albert Necaise diligently collected Parker's insurance proceeds, he should be entitled to the agreed upon attorney's fees that were reasonable. Oak Tree benefited from Mr. Necaise's services at no cost, and the common-fund theory that has been employed by the United States Supreme Court ought to *1318 be utilized in this Court. I, accordingly, dissent.
Albert Necaise does not contend that he represented Oak Tree. Rather he notes that Oak Tree profited from his representation of Richard Parker, the true property owner, and had Oak Tree chosen to bring a recovery suit, it would have too incurred attorneys' fees. The common-fund doctrine, utilized and upheld by the United States Supreme Court, is applicable to the case at hand. The Supreme Court has stated:
Since the decisions in Trustees v. Greenough, 105 U.S. 527 [26 L.Ed. 1157] (1882), and Central Railroad & Banking Co. v. Pettus, 113 U.S. 116 [5 S.Ct. 387, 28 L.Ed. 915] (1885), this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. See Mills v. Electric Auto-Lite Co., 396 U.S. 375 [90 S.Ct. 616, 24 L.Ed.2d 593] (1970); Sprague v. Ticonic National Bank, 307 U.S. 161 [59 S.Ct. 777, 83 L.Ed. 1184] (1939); cf. Hall v. Cole, 412 U.S. 1 [93 S.Ct. 1943, 36 L.Ed.2d 702] (1973). The common-fund doctrine reflects the traditional practice in courts of equity, ... and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees, Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. [240] at 257-258 [95 S.Ct. 1612, 1621-22, 44 L.Ed.2d 141] (1975). The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense ... Jurisdiction over inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.
Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). See Fleischmann Corp. v. Maier Brewing Co., 386 U.S. 714, 718-19, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967).
As with the case at hand, the facts of the above cases involved situations where more than one claimant had standing to sue. The Court ruled that attorneys' fees were to be charged against all who benefited from the services of the retained attorneys. This included those claimants who did not hire an attorney. The exact fairness ought to be applied in the case sub judice.
An apt analogy can be made to the area of workers' compensation law. In U.S. Fire Insurance Company v. Hill, 209 So.2d 440 (Miss. 1968), Roger Dale Hill was injured in the course of his employment by a Newton County school bus. Hill received workers' compensation benefits from his employer's insurance carrier, U.S. Fire Insurance Company. Hill, 209 So.2d at 441. A third party action was commenced against Newton County, Mississippi. Id. The trial court found Newton County to have been negligent and ordered that a judgment be entered against it in the amount of $145,000.00. Id. The statute which provided for third party actions read:
[A]ny amount recovered by the injured employee ... from a third party shall be applied as follows: Reasonable costs of collection as approved and allowed by the court in which such action is pending, or by the commission of this state in case of settlement without suit, shall be deducted; the remainder, or so much thereof as is necessary, shall be used to discharge the legal liability of the employer or insurer, and any excess shall belong to the injured employee or his dependents.
Miss. Code Ann. § 6998-36 (1942). Under this provision, this Court held that attorneys' fees were included in determining the "reasonable costs of collection." Hill, 209 So.2d at 442. Therefore, before the insurer or the employee could recover their rightful amounts, the attorneys' fees were paid. See Powe v. Jackson, 236 Miss. 11, 109 So.2d 546 (1959); Richardson v. United States Fidelity & Guaranty Company, 233 Miss. 375, 102 So.2d 368 (1958).
There is no Mississippi authority which provides that the mortgagee takes priority over an attorney who took the appropriate action of collecting for his client, the mortgagor. Oak Tree would not be entitled to the insurance proceeds had it not been for the insured, Richard Parker, taking the appropriate *1319 action to recover the proceeds. All too often, the mortgagee, knowing that he is entitled to the entire amount of insurance proceeds, sits on his rights and waits for the insured, who is in control of the property, to reach, through the aid of an attorney, the insurance proceeds. With the rendering of the majority's decision, Oak Tree and other mortgagees, in effect, are able to profit and reap all the benefits of the insurance at no cost because had Oak Tree brought suit to recover the proceeds, it would have had to seek the aid of an attorney. I doubt if any mortgagee will ever bring a recovery suit since the most economical procedure would be to wait until the insured brings suit. The only practical and feasible method in disbursing the proceeds would be analogous to the aforementioned cases with this Court holding that an attorney's fee is a cost of litigation which comes off the top of the recovery before the mortgagee recovers on his existing lien. With the majority's holding today, woe unto the attorney who wishes to represent an insured who has a standard mortgage clause included in a mortgage. How is such an insured to collect? No astute attorney would represent one such as Parker because there is no chance to be rightfully paid for his or her services rendered.
This in no way prevents Oak Tree from recovering its entire interest. Oak Tree is still entitled by law to proceed against the insured, Richard Parker, for any amount remaining due under the mortgage. The Harrison County Court reached the only just and equitable resolution. The circuit court's reversal and this Court's affirmance of the reversal is in error. Accordingly, I dissent.
DAN M. LEE, P.J., joins this opinion.